## AMERICAN INDIAN OIL & GAS CO. v. CITY OF POTEAU et al.

No. 15626—Opinion Filed April 21, 1925.

(Syllabus.)

**1. Corporation Commission—Public Utility Rates—Determination of "Present Fair Value" of Property.**

In determining the present fair value of the property of a public utility for rate-making purposes, neither original cost nor reproduction cost new, considered separately, is determinative, but consideration should be given to both original cost and present reproduction cost, less depreciation, together with all the other facts and circumstances which would have a bearing upon the value of the property, and from a consideration of all these a fair present value is to be determined.

**2. Same—Burden of Proof in Proceeding by Public Utility.**

In a proceeding instituted before the Corporation Commission by a public utility for the purpose of having established a rate to be charged by it for the service rendered, it is incumbent upon such public utility to establish, by competent evidence, the fair and reasonable value of its property used and useful in the public service at the time of the inquiry.

**3. Gas—Public Utility Rates—Basis of Value of Gas Lands.**

The value of gas lands for rate-making purposes is not the sale price of a cubic foot of gas as applied to the supposed quantity in a given field, but the reasonable market value of the whole tract or tracts, from which the gas is produced.

Appeal from State Corporation Commission.

Appeal by the American Indian Oil & Gas

Company from an order of the Corporation Commission fixing its gas rates. Affirmed.

White & Reid, A. Carey Hough, and Geo. A. Henshaw, for plaintiff in error.

C. S. Neal, for defendant in error City of Poteau.

E. S. Ratliff (Attorney for Corporation Commission), for defendants in error.

PHELPS, J. Prior to the incident leading up to the filing of this action, the city of Poteau obtained its gas supply from the LeFlore County Gas & Electric Company at a rate of 25c per thousand cubic feet for domestic purposes, and a minimum of 5c per thousand cubic feet for industrial purposes. The American Indian Oil & Gas Company, plaintiff in error here, having developed a gas field in close proximity to Poteau, and desiring to find or create a market for their gas, applied to the city of Poteau for a franchise authorizing it also to pipe gas to the city. The franchise, in pursuance to the request of the plaintiff in error, was voted by the people of the city of Poteau, the rates fixed in said franchise to be charged for the gas not to be more than 15c per thousand cubic feet. Subsequently the plaintiff in error purchased the distributing line of the LeFlore County Gas & Electric Company, thereby becoming the sole furnisher and distributor of gas to the citizens of the city of Poteau.

Plaintiff in error made application to the Corporation Commission for an increase in rates to be charged for the gas so furnished, and pending the hearing on this application a temporary rate of 25c per thousand cubic feet was agreed upon between the representatives of the plaintiff in error, the city authorities of Poteau, and the Corporation Commission, and on June 4, 1923, at a hearing of the application, the Corporation Commission by its order put into force and effect a rate of 20c per thousand cubic feet for the first one hundred thousand feet used each month. A rehearing was granted by the Corporation Commission, leaving in effect the temporary rate fixed by the Commission.

In January, 1924, the plaintiff in error filed another application for an increase in rates, and by agreement the two cases were consolidated, and after several hearings the Corporation Commission promulgated Order No. 2507, finding:

"That the reasonable present value of the properties used and useful by the American Indian Oil & Gas Company of Poteau is $166,061.80; that is to say that the physical property of the plant in question, including working capital, is $87,597; that the value of the leases is $28,464.80, and the value of the gas wells amount to $50,000, constituting a total of $166,061.80; that the earnings of the company for the year 1923 amount to $36,464; that there is no substantial evidence tending to show that the gas sales for the future will be less than for the year 1923; that the earnings as shown for the year 1923, to wit, $36,464, applied to the value found by the Corporation Commission in Finding No. 1, of $166,061.80, is sufficient and adequate to constitute a reasonable return for the service rendered by the applicant company; that said earnings amount to 21.9% available for interest and depreciation * * * that the present schedule in effect for domestic and industrial purposes * * * should be modified so as to provide a rate as follows, to wit: For the first one hundred thousand cubic feet, 25c per thousand; next two hundred fifty thousand cubic feet, 7½ per thousand; all in excess of three hundred fifty thousand cubic feet, 6c per thousand."

From which order of the Corporation Commission the plaintiff in error prosecutes its appeal to this court.

In determining whether the order of the Corporation Commission fixing the rate in this case should be affirmed, reversed, or modified, it is incumbent upon this court to examine the testimony offered by both sides and from the record in this case determine: First, the value of the property of the plaintiff in error used and useful in the public service; and, second, to ascertain what the operating expenses and gross income of the plaintiff in error are, from which the net income of the plaintiff in error can be determined; and, third, what is a proper return on the investment, taking into consideration the value of the property used by the utility, its operating expenses and its net income. And in order to determine these facts we must of necessity rely upon the evidence introduced by the respective parties as the same appears in the record, and, in doing that, we encounter great difficulty, for the reason that this testimony was furnished on the part of the utility by expert engineers and accountants, whom they hired to inspect the property and make an audit of the books of the company for the purpose of testifying in this case, and upon the other side by the engineers and accountants who made the inspection and audit at the direction of the Corporation Commission, by whom they were employed, in which testimony there is an irreconcilable conflict and unmistakable evidence that however honest and conscientious the witnesses may have been, they

were biased in favor of the party for whom they were rendering the service in so testifying. We are much in the same situation that this court was in Western Oklahoma Gas & Fuel Co. v. State et al. (decided December 9, 1924, petition for rehearing pending), from which opinion we quote the following statement:

"In this case our greatest trouble in determining the accrued depreciation and present fair value of the property is due to the fact that the evidence consists largely of the opinions of witnesses claiming to be experts upon the subject, and those opinions are so radically divergent as to be entirely incapable of reconciliation. The opinion of the expert upon each side goes to such an extremity in favor of the party for whom he was testifying that as to most of the items we are unwilling to accept the theory of either in arriving at our conclusion."

The property of the plaintiff in error is divided into a distributing system, including a main line from the field to the city of Poteau; and a production system, including leaseholds of some 1,600 acres of land, wells, etc. The engineers for the utility fixed the reproduction cost of the distribution system new, less accrued depreciation, or the present value of the distribution system at, in round numbers, $133,000, including about $14,000 for engineering and superintendence, law expenditures, interest, and miscellaneous expenditures, while the engineers for the Corporation Commission fixed the same, including working capital, in round numbers, at $87,000, denying that the last above items are proper estimates in fixing the present value of the utility.

Witnesses for the plaintiff in error, after inspecting the property, testified as to the cost of reproduction of the plant, including fourteen and one-half (14½) per cent. for so-called overhead expenses, which included items such as interest, injuries, and taxes during construction; they also included engineering fees, legal fees, etc. The witnesses for the Corporation Commission testified that the above-named items were not expended nor incurred in the original construction of the plant.

In Oklahoma Natural Gas Co. v. Corporation Commission, 90 Okla. 84, 216 Pac. 917, the rule for fixing the present value of the property laid down in the first and second paragraphs of the syllabus is as follows:

"The reasonable value of the property of a public utility used and useful in its public service at the time the inquiry is made should be taken as the basis of calculation in determining whether rates fixed by the Corporation Commission constitute a fair compensation for the use of the property, so that the owners are not deprived of their property without due process of law.

"In determining the present fair value of the property of a public utility, neither original cost nor reproduction cost new, considered separately, are determinative, but consideration should be given to both original cost and present reproduction cost, less depreciation, together with all the other facts and circumstances which would have a bearing upon the value of the property, and from a consideration of all these a fair present value is to be determined."

Also in McAlester Gas & Coke Co. v. Corporation Commission, 102 Okla. 118, 227 Pac. 83, in the syllabus thereof, this court said:

"In determining the present fair value of the property of a public utility, neither original cost nor reproduction cost new, considered separately, are determinative, but consideration should be given to both original cost and present reproduction cost, less depreciation, together with all the other facts and circumstances which would have a bearing upon the value of the property, and from a consideration of all these a fair present value is to be determined."

In Oklahoma Natural Gas Co. v. Corporation Commission (supra), this court laid down the rule that:

"In a proceeding instituted before the Corporation Commission by a public utility for the purpose of having established a rate to be charged by it for the service rendered, it is incumbent upon such public utility to establish, by competent evidence, the fair and reasonable value of its property used and useful in the public service at the time of the inquiry."

The production system of plaintiff in error consists of some 1,600 acres of leases, with ten or twelve gas wells, upon which the Corporation Commission fixed a total value of, in round numbers, $78,000. Of this valuation plaintiff in error complains, and we find some difficulty in arriving at a conclusion as to a rule in fixing the value of producing gas wells on large acreage that will, in our judgment, be just and equitable to both parties. Evidence was introduced on both sides as to the original cost of the leases, the cost of drilling the wells, and the value of leases on adjoining property, but counsel have not favored us with citations of authorities from this court fixing the rule by which we are to arrive at the value of the production system of the plaintiff in error, and we, therefore, presume that that subject has not heretofore been definitely settled by this court and we

must look to other states for authorities on that subject.

In City of Erie v. Public Service Commission, 123 Atl. 471, the Supreme Court of Pennsylvania laid down the rule that:

"The value of mineral land for rate-making purposes depends primarily on the demand, quantity, cost of production, and price received for the marketed product.

"The value of gas lands for rate-making purposes is not the sale price of a cubic foot of gas as applied to the supposed quantity in a given field, but its value as a whole, or per acre."

In City of Charleston et al. v. Public Service Commission, 120 S. E. 398, the Supreme Court of Appeals of West Virginia had under consideration a similar question, and the court quotes the following paragraph from the Commission's opinion:

"Whatever may be the difference of opinion as shown by court and commission decisions as to the ascertainment of fair value for other property of a gas utility, the many elements of uncertainty and speculation that must necessarily enter into all opinions regarding the value of gas leaseholds are so obvious and well-known as to render it manifestly unjust and unreasonable to place any value upon such property in excess of its actual cost."

And the court said:

"Unless the circumstances be exceptional we think this is true, and particularly so in a case like the present, where the applicant is permitted to charge the rentals and taxes necessary to carry the leasehold as an operating expense."

We can conceive of no better rule by which to fix the present value of the production system for rate-making purposes than to take its reasonable market value. This is what the Corporation Commission seems to have done.

Plaintiff in error seeks to place a much higher value on both its producing system and distributing system than the Corporation Commission found, and much is said in briefs and arguments as to the amount of money spent, the plant's value as a going concern, etc., but in view of the fact that the burden, in a measure, is upon plaintiff in error to prove that it is entitled to an increased rate, and further, in view of the fact that the Corporation Commission found that plaintiff in error is receiving a reasonable return on the value of the property as found from the evidence by the Corporation Commission, we are not inclined to disturb the order, although the rate paid by the citizens of Poteau is an unusually low rate

and the record shows that the investment had not been a profitable one, but the rate was agreed to when the franchise was voted and the present embarrassment has been brought about by the officers of the company themselves, and we feel that in equity and good conscience plaintiff in error should continue to furnish the gas at the rate prescribed in the order of the Corporation Commission until such time as it may be able to show by a preponderance of the evidence that a reasonable return cannot, under good management, be earned at such rates.

BRANSON, V. C. J., and HARRISON, MASON, LESTER, HUNT, CLARK, and RILEY, JJ., concur. NICHOLSON, C. J., dissents.

Note.—See under (1) 28 C. J. pp. 581, 582, § 43. (2) 28 C. J. p. 583, § 43 (1926 Anno.) (3) C. J. p. 581, § 43.