**PRESSURE OIL & GAS CO. v. TRI-CITY GAS CO. et al.**

No 15624—Opinion Filed April 28, 1925.

(Syllabus.)

1. **Corporation Commission — Rate-making for Public Utilities — "Present Fair Value" of Property.**

In determining the present fair value of the property of a public utility for rate-making purposes, neither original cost nor reproduction cost new, considered separately, are determinative, but consideration should be given to both original cost and present reproduction cost, less depreciation, together with all the other facts and circumstances which would have a bearing upon the value of the property, and from a consideration of all these a fair present value is to be determined.

2. **Gas—Public Utility Rates—Appeal from Order of Corporation Commission—Presumption of Reasonableness.**

On appeal from an order of the Corporation Commission fixing a rate to be charged by a gas company, if there is any evidence reasonably tending to support the order of the Commission, the prima facie presumption of the order's being reasonable, just, and correct obtains by reason of section 22, art. 9, of the Constitution, and the burden is upon appellant to overcome that presumption.

3. **Same—Order Sustained.**

Appellant's evidence examined, and, held, not sufficient to overcome the prima facie presumption of the reasonableness, justness, and correctness of the order appealed from.

Appeal from Corporation Commission.

Appeal by the Pressure Oil & Gas Company from an order of the Corporation Commission fixing its gas rates. Affirmed.

A. Carey Hough and Geo. A. Henshaw, for plaintiff in error.

E. S. Ratliff (for the Corporation Commission), for defendants in error.

PHELPS, J. This case comes here on appeal from an order of the Corporation Commission, and involves three small gas companies referred to in the record as "common-law trusts," only one of which, however, the plaintiff in error, is directly affected by the order from which the appeal was taken. The city of Chelsea obtains its gas supply from the Tri-City Gas Company, which distributes the gas to the citizens of Chelsea. The Pressure Oil & Gas Company, plaintiff in error herein, furnishes the Tri-City Gas Company the gas supplied to the citizens of Chelsea. The Pressure Oil & Gas Company is a pipe-line company, having a pipe line extending from Chelsea to the gas field, some eighteen or twenty miles away, and obtains the greater portion of its gas by purchase from the Unity Gas Company. The Unity Gas Company consists of some gathering lines in the gas field which are used for the collection of gas to be delivered to the Pressure Oil & Gas Company, and also the Co-operative Gas Company, which supplies gas to certain industries of the city of Claremore, the owners or stockholders of the Unity Gas Company and the Pressure Oil & Gas Company being practically identical, although the two companies are operated separately.

All of these companies, prior to the beginning of the proceedings herein, had been operating independently of the Corporation Commission, making their own contracts and conducting their affairs apparently satisfactorily to all parties concerned without subjecting themselves to the jurisdiction of the Corporation Commission. However, on the 27th day of May, 1923, the Tri-City Gas Company filed its petition with the Corporation Commission alleging that it purchased its supply of gas for distribution to its consumers in Chelsea from the Pressure Oil & Gas Company under contract at the agreed price of 20c per M cubic feet, and that said contract expired on May 6, 1923, and that notice had been given it by the Pressure Oil & Gas Company that thereafter a rate of 25c per M cubic feet would be charged. It further alleged that it had been supplying the gas to consumers of Chelsea at 50c per M cubic feet for domestic purposes, and that in case it was compelled to pay the 25c rate demanded by the Pressure Oil & Gas Company a consequent raise in the price to its consumers would be necessary, and prayed for an order permitting it to make such raise. Notice of such application was given to the city officials of the city of Chelsea, and also to the Pressure Oil & Gas Company. The Pressure Oil & Gas Company came in and filed application for an increase in rates charged for gas gathered and transported to the city gate of the city of Chelsea, and made itself a party applicant in the adjustment of the gas rate situation, praying that for the acquisition, gathering, transporting, and delivering of the gas to the town borders of the city of Chelsea it be granted a rate of 30c per M cubic feet.

After a full and complete hearing the Corporation Commission made an order authorizing the Pressure Oil & Gas Company (effective May 1, 1924) to charge for natural gas supplied at the city gate of the city of Chelsea to the Tri-City Gas Company a rate of 25c per M cubic feet for all gas sold, furnished, and supplied, and from this order of the Corporation Commission the Pressure Oil & Gas Company, plaintiff in error herein, appeals to this court.

In determining what disposition should be made of this case by this court it is incumbent upon us to determine from the record herein, primarily, the value of the property used and useful, of plaintiff in error, in furnishing the gas in question, and in doing that we are in the same situation we find ourselves in practically every case of this nature—somewhat bewildered by the divergent views as expressed by the witnesses on both sides of the controversy. In fact, there is an irreconcilable conflict in the testimony of the witnesses as to the value of the property, used and useful, of the Pressure Oil & Gas Company. Literally, reams of evidence appears in the record and copious briefs have been filed by counsel for both sides, much of which evidence and some of the matters contained in the briefs having but little to do with the real gist of this action. The method of fixing the value for rate-making purposes of the property, used and useful, of a utility is well settled in this state, and it seems to us that by following the well-settled rules as laid down by this court much time and space could be saved.

In Oklahoma Natural Gas Co. v. Corporation Commission, 90 Okla. 84, 216 Pac. 917, the rule for fixing the present value of the property laid down in the second paragraph of the syllabus is as follows:

"In determining the present fair value of the property of a public utility, neither original cost nor reproduction cost new, considered separately, is determinative, but consideration should be given to both original cost and present reproduction cost, less depreciation, together with all the other facts and circumstances which would have a bearing upon the value of the property, and from a consideration of all these a fair present value is to be determined."

Also in McAlester Gas & Coke Co. v. Corporation Commission, 102 Okla. 118, 227 Pac. 83, in the syllabus thereof, this court said:

"In determining the present fair value of the property of a public utility, neither original cost nor reproduction cost new, considered separately, is determinative, but consideration should be given to both original cost and present reproduction cost, less depreciation, together with all the other facts and circumstances which would have a bearing upon the value of the property, and from a consideration of all these a fair present value is to be determined."

In arriving at a proper rate base to be adopted in establishing a city gate rate for the gas supplied the city of Chelsea the Corporation Commission found it necessary to consider both the property used and useful of the Pressure Oil & Gas Company in transporting the gas thereto and that portion of the property owned by the Unity Gas Company and used in gathering and delivering the gas to the Pressure Oil & Gas Company in the field, finding that the amount of gas gathered and supplied to the Pressure Oil & Gas Company and the Co-operative Gas Company by the Unity Gas Company bears a relationship of 40 to 60;

40 representing the amount of gas supplied Chelsea through the Pressure pipe line and 60 representing the amount of gas supplied through the Co-operative pipe line to the city of Claremore; and from the testimony of witnesses before it, made the following finding:

"Taking the value of the Pressure Oil & Gas Company testified to by the Commission's engineer of $42,359.99 and adding thereto the value found by him of the Unity Gas property, which is used in gathering gas for distribution in Chelsea, amounting to $15,637.21, we have a combined value of $57,996. Adding to this for overheads and intangibles, including working capital and going concern value heretofore used by the Commission of 20%, we arrive at a total figure of the combined properties of $68,595.

"Under all the circumstances and the testimony taken as a whole in this cause, the Commission is of the opinion that this is more than liberal for a rate base in the cause now being considered. It will therefore be adopted as a basis upon which a rate at the city gate at Chelsea is determined."

The engineer for plaintiff in error places a much higher value on the property in question, seemingly using as a basis for fixing the value thereof reproduction new, less depreciation. We quote from the testimony of Mr. Musson, engineer for the company, as follows:

"The total replacement value of the property before depreciation is $107,072.21. I found condition per cent. of 75; this would make the present or depreciated value of $80,821.37. This valuation does not include going concern value, working capital, franchise, or other intangible values. The only overheads shown were superintendency, law expenditures, injuries and interests during construction. At least six weeks of their average operating expense for the twelve months period should be included as working capital. The Commission has heretofore added twenty per cent., which includes working capital, going value, and other intangibles."

Thus it will be seen that the testimony of the engineers on both sides is in such hopeless and irreconcilable conflict that we must of necessity look elsewhere for evidence upon which to base a just and correct finding as to the present fair value of the property. The record discloses that the pipe line of the company is composed largely of wrought iron pipe, and for that reason plaintiff in error claims a much higher value should be placed upon it than if it were the ordinary steel pipe, claiming that it resists the corroding influences of the earth in which it is buried to a great-

er extent and is much longer lifed than the steel pipe. However, the evidence shows that its original cost was much less than steel pipe at the present time, and while the original cost alone cannot be considered a basis for fixing the value of the pipe line, we deem it not improper to refer to a statement made by Mr. Mason, the president of the company, which statement is a part of the record and was made under oath by Mr. Mason in the annual return made by the Pressure Oil & Gas Company to the State Auditor for use by that department in placing a value upon the company's property for taxing purposes for the year 1923, the pipe mentioned therein being the same property under consideration here, which statement is highly illuminative as to the origin and kind of pipe the line is composed of and as to the company's opinion of its value when taxation instead of rate making is under consideration. For the purpose of taxation the president, under oath, fixed the value thereon at $12,047.13, and for the purpose of rate making the engineers employed by the company to place a value thereon for ratemaking purposes say it is worth $80,821.37. The statement is as follows:

"This was second-hand pipe when purchased in 1908 by the Cherokee Pipe Line Company and purchased from them by True-Keith Company in 1913, paying therefor 14½c per foot for 70% and 20c per foot for 30%, the same being purchased from the True-Keith Company in May, 1920, by the Pressure Oil & Gas Company. With the natural depreciation our values seem too high, especially in view of the fact that we are not a regular pipe-line company, but are marketing our gas and a little we purchase from adjoining wells, and our annual sales show the very limited market we have."

The testimony of the auditors for both sides seems to be as conflicting and inharmonious as to the earning and expenses of the company as is the testimony of the engineers as to the value of the property and from the evidence before us we have as great difficulty in determining the true facts as to the income and expense of the company as we have in determining its value.

We do not consider the findings and orders of the Corporation Commission as having the same weight and binding effect upon this court as the findings and judgment of a court in equity matters, or the verdict of the jury and judgment of the court thereon in law cases, but section 22 of art. 9 of the Constitution of Oklahoma provides:

" * * * That the action of the Commission appealed from shall be regarded as prima facie just, reasonable, and correct. * * *"

And in Atchison, Topeka & Santa Fe Ry. Co. v. State, 28 Okla. 476, 114 Pac. 721, this court said in the syllabus of the opinion:

"On appeal from an order of the Corporation Commission * * * if there is any evidence reasonably tending to support the order of the Commission, the prima facie presumption of the order's being reasonable, just, and correct obtains by reason of section 22, art. 9, of the Constitution, and the burden is upon appellant to overcome that presumption."

This rule was followed in M., K. & T. Ry. Co. v. State, 28 Okla. 610, 115 Pac. 770, and seems to have been the rule followed by this court from statehood down to the present time. St. Louis & S. F. R. Co. v. Loftis, 25 Okla. 496, 106 Pac. 824; M., K. & T. Ry. Co. v. Town of Wicher, 25 Okla. 586, 106 Pac. 852; A., T. & S. F. Ry. Co. v. State, 23 Okla. 210, 100 Pac. 11; C., R. I. & P. Ry. Co. v. State, 24 Okla. 370, 103 Pac. 617; Kansas City So. Ry. Co. v. Love, 23 Okla. 224, 21 L. R. A. (N. S.) 908, 211 U. S. 210, 53 L. Ed. 150; A., T. & S. F. Ry. Co. v. State, 23 Okla. 510, 101 Pac. 262; St. Louis & S. F. Ry. Co. v. Williams, 25 Okla. 662, 107 Pac. 428.

Also in the recent case of Oklahoma Natural Gas Co. v. Corporation Commission, 90 Okla. 84, 216 Pac. 917, in the syllabus thereof this court said:

"In a proceeding instituted before the Corporation Commission by a public utility for the purpose of having established a rate to be charged by it for the service rendered, it is incumbent upon such public utility to establish, by competent evidence. the fair and reasonable value of its property used and useful in the public service at the time of the inquiry."

Therefore, since the burden is upon plaintiff in error to show by the evidence that the order made by the Corporation Commission is not just. reasonable, and correct, which, in our judgment, plaintiff in error has failed to show, and in view of the fact that the Corporation Commission's order permitted plaintiff in error to charge the same rate which it had offered to contract to furnish the gas for, it is the opinion of this court that plaintiff in error cannot be heard to complain, and we will, therefore, not disturb the order made by the Corporation Commission.

All the Justices concur.

Note.—See under (1) 28 C. J. pp. 581, 582, § 43; 12 R. C. L. 901; 4 R. C. L. Supp. p. 776; 5 R. C. L. Supp. p. 658. (2) 28 C. J. p. 586, § 47. (3) 28 C. J. p. 586, § 47.