Note.—See under (1) 15 C. J. p. 577, § 279. (2) 15 C. J. pp. 574, § 278, 575, § 279, 580, § 281. (3) 15 C. J. p. 588, § 290 (Anno). (4) 15 C. J. pp. 518, § 192 (Anno); 530, § 214 (Anno). (5) 15 C. J. p. 580, § 280 (Anno). See under (2, 3) 37 L. R. A. (N. S.) 1058; L. R. A. 1917E, 437; 7 R. C. L. pp. 953, 954; 2 R. C. L. Supp. 481.

---

## WESTERN OKLAHOMA GAS & FUEL CO. v. STATE et al.

No. 14999—Opinion Filed June 23, 1925.

Rehearing Denied Sept. 22, 1925.

(Syllabus.)

**1. Corporation Commission—Order Fixing Rates of Public Utilities—Reasonableness—Review.**

Where the evidence fairly shows that a rate fixed by the Corporation Commission will bear a reasonable net return on the investment, this court will not disturb the findings and order of the Corporation Commission made thereon.

**2. Same—"Present Fair Value" of Property —Determination.**

The value of the property for rate-making purposes is a reasonable fair value of the property as the same exists at the time the inquiry is made, and in determining the present fair value of the property, neither original cost nor reproduction cost new, considered separately, is determinative, but that consideration must be given both to original cost and present reproduction cost, less depreciation, together with all the other facts and circumstances which would have a bearing upon the property, and from a consideration of all these a fair present value is to be determined.

**3. Same—Order Fixing Gas Rates Sustained.**

Record examined; held, that the evidence reasonably tends to support the order and judgment of the Corporation Commission.

Appeal from Order of Corporation Commission.

From order fixing gas rates, the Western Oklahoma Gas & Fuel Company appeals. Affirmed.

Robert D. Garver, for plaintiff in error.

J. W. Marshall, City Atty. of Duncan, and E. S. Ratliff, Counsel for Corporation Commission, for defendants in error.

LESTER, J. This case is appealed from an order of the Corporation Commission. On the 21st day of May, 1921, the Western Oklahoma Gas & Fuel Company made an application to the Corporation Commission for an increase in rates for natural gas sold and distributed by it to the inhabitants of the cities of Duncan and Marlow, Okla. Plaintiff in error owns and operates the gas distributing system in said cities, while the Southwestern Oklahoma Gas & Fuel Company owns and operates the pipe line by which the gas is delivered from the pipe line of the Oklahoma Natural Gas Company, from which the gas is purchased, to the city gates. Both companies, however, are owned by the same interests and are treated by the parties as a single entity or corporation, and will be so treated here.

On the 3rd day of July, 1923, the case came on to be heard by the commission, and on the 30th day of November, 1923, it made an order fixing the rate at 65c per M cu. ft. for the first 150,000 cu. ft. per month; 45c per M cu. ft. for the next 350,000 cu. ft. per month, and 35c per M. cu. ft. for all over

and above 500.000 cu. ft. per month, which was an increase of 10c per M cu. ft. from the top rate, the 45c and 35c remaining unchanged, and from this order, plaintiff in error has appealed and assigns error. The percentage of gas sold and distributed at the 45c and 35c rate is so small and reflects so slightly the conclusions to be reached that they will not be considered further. It is only necessary to consider the first assignment of error, as it raises all the questions involved, and is as follows:

"The rates prescribed in order No. 2302 are insufficient to allow a sufficient return to pay costs of operation and adequately allow for depreciation and return upon the fair value of the property used and useful in the service rendered."

The matter would not be difficult of determination if the engineers for the company and for the Corporation Commission, who were called by the respective parties to testify as experts, had adopted the same basis of calculation, but where the views of experts are so widely diverse and their theories so irreconcilable as in the instant case, the court will adopt such middle ground as will come nearer harmonizing the whole record in the case and lead to a 'fair and just conclusion. No one contends that plaintiff in error is not entitled to a fair return on its investment, and in fixing a rate that will be adequate to such return it is necessary to determine the present fair value of the property used and useful and the reasonable cost of operation, together with a sufficient allowance for depreciation. In fixing the present fair value of the property, the engineers for both parties base the same on a cost of reproduction new, which is an incorrect premise.

In Oklahoma Natural Gas Co. v. Corporation Commission et al., 90 Okla. 84, 216 Pac. 917, this court, speaking through Mr. Justice Nicholson, announced the true rule to be as follows:

"The value of the property for rate-making purposes is the reasonable fair value of the property as the same exists at the time the inquiry is made; and that in determining the present fair value of the property neither original cost nor reproduction cost new, considered separately, is determinative, but that consideration must be given both to original cost and present reproduction cost, less depreciation, together with all the other facts and circumstances which would have a bearing upon the value of the property, and from a consideration of all these a fair present value is to be determined."

And the rule thus announced has been approved in McAlester Coal & Coke Co. v. Corporation Commission, 102 Okla. 118. 227

Pac. 83; American Indian Oil & Gas Co. v. City of Poteau et al., 108 Okla. 215, 235 Pac. 906; and Pressure Oil & Gas Co. v. Tri-City Gas Co., 108 Okla. 248, 236 Pac. 41. This rule cannot be followed in the case at bar for the reason that the original cost of the property does not appear in the record. Mr. Eastman, engineer for the company, fixed the cost of reproduction new of the physical property at $250,750, and to this sum he added 43.9 per cent. of the same, or $110,100, for intangibles and overheads, making a total cost of $360,880. He then depreciated the same at an average rate of 24.8 per cent., leaving a value for rate-making purposes of $271,583. Mr. Stockwell, engineer for the Corporation Commission, fixed the cost for reproduction new of the physical property at $152,384.21. He then depreciated this sum at an average rate of 38.2 per cent., making the depreciated cost of reproduction new $94,255.98, and to this he adds 20 per cent. of the same for overhead and intangibles, making a total cost for rate-making purposes of $113,107.20, and this is the value fixed by the Corporation Commission in its order of November 30, 1923.

It will be seen that there is a difference between the two enginers of $158,476 as to the value of the property for rate-making purposes. The engineer for the gas company has included in his valuation of $360,880 an item of $110.100 for overhead and intangibles, and an item of $75,000 for a pipe line not now in use or useful to the company in the service rendered, and deducting these two items leaves an undepreciated valuation of the physical property in the sum of $175,780. The engineer for the Corporation Commission failed to include in his valuation of $152,384.21 an item of $3,-961 for material and supplies on hand, which, when added, makes a total undepreciated valuation of the physical property of $156,345.21. The difference between the undepreciated valuation of the physical property as fixed by the gas company's engineer and as fixed by the engineer of the Corporation Commission is $19,434.79, which difference of opinion may easily arise over the question of relative value. The difference to the extent that it becomes irreconcilable arises when we come to deal with intangibles and depreciation, and we are not unmindful in the outset that these belong largely to the realm of speculation and opinion. They are based on estimate and the estimated result is not based on basic evidence, but reflects the particular opinion of the person giving expression thereon, hence the

irreconcilability. Depreciate the undepreciated veluaton of the physical property as fixed by the engineer of the gas company 25 per cent., which was the average rate employed by him in round numbers, and add to it 20 per cent. for overheads and intangibles, the rate used by the Corporation Commission, and it results in a value of $158,202 for rate-making purposes. Depreciate the undepreciated valuation of the physical property as fixed by the engineer of the Corporation Commission, after adding the $3,961 for materials and supplies, 25 per cent. and add to it 20 per cent. for overheads and intangibles, and the valuation for rate-making purposes is found to be $140,700.69.

In order to arrive at what would be a fair return on the investment, it is necessary to ascertain under the rate fixed by the Corporation Commission what will be the probable future operating revenue of the gas company and its probable future operating expenses, and in order to do this, it is necessary to look to what they have been in the past.

In 1920, the gas company sold and distributed to the cities of Duncan and Marlow, 165,993 cu. ft.; in 1921, 228,402 cu. ft.; in 1922, 248,112 cu. ft. Considering the fact that the sale and distribution of gas has so rapidly increased over a period of three years next preceding this hearing, we feel that it is reasonable to assume that for future years it will at least be in an average amount equal to that of 1922, and if this is true, the average operating revenue from the sale and distribution of gas at 65c per M cu. ft., the rate fixed by the Corporation Commission, will be $161,272.80.

The gas sold and distributed is purchased from the Oklahoma Natural Gas Company at 38c per M cu. ft., and adding 10 per cent. for leakage to the amount sold, makes the necessary amount to be purchased used per annum 272,923 cu. ft. at a cost to the gas company of $103,710.81, leaving a balance in its hands of $57,561.99, as gross revenue. The average amount of gas sold and distributed per annum for the three year period next preceding the date of inquiry is 214,169 cu. ft., and with the purchasing and selling price the same as above indicated, with the same per cent. allowed for leakage, the gross revenue produced is $49,687.31. By distributing the extraordinary and unusual expense of maintenance of mains and service in the year 1922 over a period of three years instead of charging it all to one year, the average operating expense per annum for the three year period next preceding the

hearing is $27,079.61, and deducting this sum from the gross income of $57,561.99 on the one hand, and $49,687.31 on the other, the net income is $30,482.38 and $22,607.70, respectively. If the capital invested is $158,202, and the net income is $30,482.38, the rate earned is 19.8 per cent. plus. If the capital invested is $140,700.69, and the net income $30,482.38, the rate of earning is 21.6 per cent. plus. If the capital invested is $157,202, and the net income $22,607.70, the per cent of the earnings is 14.2 per cent. If the capital invested is $140,700.69, and the net income $22,607.70, the rate of earnings is 16 per cent.

We have viewed this case from its various angles in order that it might more clearly appear what would be such a reasonable rate as would produce a fair return. The gas plant was constructed during the year 1912, and had been in operation something like eleven years when this hearing was had. The company's engineer, Mr. Eastman, made a careful examination of the property to ascertain its condition and to determine to' what extent it had depreciated, and his inspection was to such an extent that he was able to depreciate by unit rather than as a whole. He made more than 300 openings in the ground at various places to ascertain the condition of the pipes, and made what might be called a minute exhaustive inspection of the property, and when he was through, depreciated the property upon an average of 25 per cent., or 2 per cent. plus per annum, as against Mr. Stockwell's depreciation of an average of 38.2 per cent., or 3.4 per cent. per annum. There is no evidence in the record as to depreciation except that of the two engineers. There is nothing upon which a middle ground might be adopted and we have concluded to follow the estimate of Mr. Eastman, for the reason that it seems to be based upon a more thorough inspection of the property and a better knowledge of its condition. Whatever theory of depreciation may be adopted, whether it be the straight line theory or the theory of unit inspection, we realize how futile it is for anyone, whether he be expert or layman, to undertake to fix to a certainty the depreciation this gas plant has undergone. The percentage of depreciation has never been standardized, and there is evidently great difficulty in fixing an exact standard. If each unit of a plant should be inspected by an expert and its conditions separately noted, it would then be only a matter of his opinion as to the extent of depreciation, but such an inspection is rarely if ever made.

Counsel for plaintiff in error has called our attention to no reported case, either by the courts or public utility commissions, where 44 per cent. of the value of the physical property reproduction cost new was permitted to be added for overheads and intangibles in fixing the value of the property for rate-making purposes, and neither have we knowledge of any such case. A per cent. so large is not supported by primary substantive evidence or by the weight of authority and is disapproved.

In a very recent case, an order made by the Michigan Commission of 14 per cent. was approved by the United States District Court of the Eastern District of Michigan. Monroe G. & F. Co. v. Michigan Public Utilities Commission, 292 Fed. 149. The Corporation Commission added 20 per cent. for overheads and intangibles, less than one-half that added by the engineer of the company, and it does not appear that this is arbitrary or unreasonable. The commission may pursue its own method in fixing the value of these items, whatever that method may be, and it should be upheld so long as it is fair and equitable and is in no way injurious to or destructive of the substantial rights of some party to the litigation, and the action of the commission in this respect is approved. In other words, we approve the action of the commission, not as a hard and fast rule to be followed in all cases, but as one clearly justified by the facts, circumstances, and conditions surrounding the case at bar.

In Okmulgee Gas Co. v. Corporation Commission, 95 Okla. 44, 220 Pac. 33, Mr. Justice Kennamer, speaking for the court, said:

"It appears that the Corporation Commission usually makes an allowance of 20 per cent. to cover the items of going concern value, working capital and contingencies, and from an examination of the authorities we are convinced that the allowance is a reasonable one."

The rate-fixing power is legislative, whether it be exercised by the Legislature itself or by some other agency created by law for that purpose. and is subject to review by the courts.

The Legislature of Oklahoma has never exercised this power, but under section 19, art. 9, of the Constitution, it has authorized the Corporation Commission to do so as to utilities producing, furnishing, or distributing gas for light or heat purposes (ch. 93, S. L. 1913), and in the last analysis an order of the Corporation Commission fixing rates is entitled to the same consideration as if the Legislature had fixed them, there being no distinction except in the method of procedure. If the rate is fixed by the Legislature and is challenged, the facts must be developed in the courts, while in a proceeding to fix rates by the commission the facts must be developed there. As to whether a legislative act fixing rates is confiscatory of property rights and in violation of the Fourteenth Amendment of the Constitution of the United States, is entirely dependent upon the facts. and the same is true as to an order of the Corporation Commission. It is not conceivable that any rate-fixing act of the Legislature or rate-fixing order of the commission would be held unconstitutional on its face because of the rate fixed. If the order of the commission is void, it must be on the ground that it denies to the gas company a fair return on the capital invested and is therefore confiscatory. and a taking of its property without just compensation and deprives it of the same without due process of law. The fair present value of the property we determine to be $140,700.69, and in reaching this conclusion we have not adopted the findings of the Corporation Commission, neither have we followed the contention of plaintiff in error, but have attempted to reconcile the evidence in its entirety, which, when viewed in its true light, leaves not a wide margin of difference between the two parties. Based on the average sales of gas for three years next preceding the hearing, the operating revenue for future years will be $139,209.85 per annum, and deducting the purchase price of the gas. $89,522.54, leaves a gross revenue of $49,687.31. The average operating expense for three years next preceding the hearing is $27,079.61 per annum, and when deducted from the gross revenue leaves a net income of $22,607.70, which is equivalent to 16% on the capital invested, which we hold to be fair and adequate. It is reasonable to suppose that in future years the volume of business will increase in greater proportion than the expense, and the margin of profit becomes that much greater.

It is argued by plaintiff in error that it has sustained losses in previous years and that it is entitled to an unreasonable present rate to make up the deficit. This contention is not sound. It would be manifestly unequitable to saddle the present consumers with past deficits and neither past profits nor past losses will be taken into account in fixing the rate for the future. Okmulgee Gas Co. v. State, 85 Okla. 44, 204 Pac. 443; Oklahoma Natural Gas Co. v Cor-

poration Commission, 90 Okla. 84, 216 Pac. 917; City of Minneapolis v Rand, 285 Fed. 283; Garden City v. Garden City Tel., etc., Co., 236 Fed. 693: Georgia Ry. Co. v. R. R. Com., 278 Fed. 242.

The presumption is that the Corporation Commission acted fairly in fixing the rate and the burden of proof is on the gas company to show that the rate fixed will deprive it of a fair return on its property, and under section 22, art. 9, of the Constitution. if there is any evidence to support the order of the commission, the prima facie presumption of fairness and reasonableness will obtain. A., T. & S. F. v. State, 28 Okla. 476, 114 Pac. 721; Des Moines Gas Co. v. City of Des Moines, 238 U. S. 153.

Plaintiff in error has not met its obligation to discharge the burden cast upon it by the Constitution and the order and judgment of the Corporation Commission is affirmed.

NICHOLSON, C. J., and MASON, PHELPS, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 28 C. J. p. 586, § 47. (2) 28 C. J. pp. 581, 582, § 43. (3) 28 C. J. p. 586, § 47.