**LONE STAR GAS CO. et al. v. CORPORA-TION COMMISSION et al.**

Nos. 24995, 24996.   July 10, 1934.

Rehearing Denied Oct. 16, 1934.

Application for Leave to File Second Petition for Rehearing Denied Jan. 14, 1935.

Karl F. Griffith, Roy C. Coffee, Marshall Newcomb, Blakeney & Ambrister, and C. C. Hatchett, for plaintiffs in error.

A. Holmes Baldridge, for defendants in error.

BAYLESS, J. The matter under consideration involves two appeals: No. 24995, Lone Star Gas Company, Plaintiff in Error, v. Corporation Commission of Oklahoma et al., Defendants in Error; and No. 24996, Community Natural Gas Company, Plaintiff in Error, v. Corporation Commission of Oklahoma et al., Defendants in Error. These appeals arise from certain orders of the Corporation Commission in cause No. 10777 pending before it. The parties to this appeal will be referred to hereinafter as follows: Community Natural Gas Company, as Community; Lone Star Gas Company, as Lone Star; the Corporation Commission of Oklahoma, as Commission; and the Lone Star Gas Corporation, a corporation which plays a part in the discussion of this matter, as Holding Company.

The proceedings originated before the Commission when certain citizens of Walters, Okla., filed their protest against the burner-tip rates charged by the Community for natural gas and applied for a reduction in said rates. The protest and application were joined in thereafter by the citizens of other towns served by Community until 26 towns were involved.

A preliminary statement of the relationship of each of the companies above named to each other and to the proceedings, and of the substance of the order entered by the Commission, will be of assistance in understanding the discussion to follow.

Community is a corporation organized under the laws of Delaware and serves consumers of natural gas in the towns above mentioned with natural gas at the burner-tip. Lone Star is a Texas corporation; it produces, buys, gathers, and transports natural gas to the city gates of the towns mentioned, and sells to the Community at the gates of said towns. It has qualified to do business in the state of Oklahoma. Holding Company is a corporation organized

under the laws of Delaware, but maintains its principal offices in Pittsburgh, Pa. It has not qualified to do business in the state of Oklahoma. It owns approximately 95% of the stock of Lone Star and of Community. In addition, under contracts with them, it furnishes to them certain "management services" enumerated and commented upon later on in this opinion, in consideration for which services Lone Star and Community make payments to the Holding Company from their income. These payments are taken into consideration by Lone Star and Community in their base rate.

The Commission at the outset decided that because of the intercorporate relationship of these parties it would be necessary to investigate into the reasonableness of the "management" fees paid by Community to the Holding Company and paid by the Lone Star to the Holding Company, to determine whether said management fees were reasonable charges for consideration in the rate base of Community, and to investigate the set-up of the Lone Star to determine whether or not the rate which was being paid by the Community to Lone Star for natural gas at the city gates was reasonable; and generally to determine whether or not by reason of the integration and intercorporate relationship of these three corporations unreasonable expenses were being charged into the rate base of the Community. Lone Star protested against the jurisdiction of the Commission to make such investigation of it, but upon its protest being overruled, submitted the evidence requested in every respect save such information as was within the possession of the Holding Company. Holding Company denied the jurisdiction of the Commission to investigate it, and, when its preliminary protest was overruled, ignored the proceedings, the Commission's subpoenas to its officers, and the Commission's subpoena duces tecum for its records. The Commission thereupon made findings based upon the evidence introduced and entered a temporary order, from which the Lone Star and the Community appeal.

We will consider the appeal of Community first.

The argument advanced by Community pertains to the order actually made by the Commission, and consists of two parts:

"1. The order of the Commission herein, in so far as same requires the Community to reduce its burner-tip rate for natural gas and natural gas service to the extent of ten (10c) cents per thousand cubic feet,

is arbitrary, mere legislative fiat and therefore void, for the reason that said Commission has made no determination or finding of the value of the properties devoted to the public service in the towns affected by said order, the expenses of operation, the proper annual allowance for depreciation and amortization, the income received by the company under the present rates and the income or probable income which it will receive under the rates fixed by the Commission, and what constitutes a fair and reasonable rate of return to the company.

"2. The Commission erred in ordering and requiring the Community to reduce its burner-tip rate ten (10c) cents per thousand cubic feet of natural gas for the reason that the uncontradicted and undisputed evidence in this case shows that the Community is not receiving under the present rates and will not receive under the rates fixed by the Commission, a fair and reasonable return upon the fair value of the property devoted to the public service in any of the 26 towns in the state of Oklahoma in which it operates even though the gate rate paid by the Community to the Lone Star be reduced to and fixed at thirty (30c) cents per thousand cubic feet of gas."

This argument is made upon the assumption that the Commission had before it all of the evidence necessary to make findings and orders as contemplated by article 9, sec. 22, Constitution of Oklahoma. If this argument is not based upon this assumption, it is entirely irrelevant and beside the point. Without such an assumption it would not apply to the order actually made.

The Commission's specific finding No. 57 reads: "That this order is in the nature of a temporary order." Its findings Nos. 58 and 59, based upon a record showing that all of the evidence desired and requested had not been presented to it but had been withheld, make it patent that no permanent order could have been entered at that time. The record plainly shows that the Commission entered upon a rate-making proceeding and adopted as a part of its formula for the determination of the matter the theory that an investigation of the intercorporate relations between the three corporations was an important factor. Any information to be obtained from such an investigation would enter into and affect the order to be made. Therefore, there could be no final or permanent order on this matter in the absence of this investigation and information to the extent to which the Commission, by law, could or should pursue it.

Temporary orders are proper. Muskogee G. & E. Co. v. State, 81 Okla. 176, 186 P. 730; City of Bartlesville v. Corporation Commission, 82 Okla. 160, 199 P. 396; O. G. & E. Co. v. Corporation Commission, 83 Okla. 281, 201 P. 505; and American Indian Oil & Gas Co. v. Collins & Co., 157 Okla. 49, 9 P. (2d) 438, wherein it was said, quoting from the case of O. G. & E. Co. v. Corporation Commission, supra:

"The legislative power of the Corporation Commission over rates is not confined to prescribing permanent rates, but may be exercised as the exigency of the times and changing conditions demand."

There are more theories or formulas than one which may be adopted and followed by rate-making bodies. None is exclusive or more favored than the others. Pioneer T. & T. Co. v. Westenhaver, 29 Okla. 429, 118 P. 354, and American Indian Oil & Gas Co. v. Collins & Co., supra. This is the federal rule also, for it was said in Los Angeles G. & E. Corp. v. Railroad Commission, 289 U. S. 287, 304-306, 77 L. Ed. 1180, 1192-1193:

"The legislative discretion implied in the rate-making power necessarily extends to the entire legislative process, embracing the method used in reaching the legislative determination as well as that determination itself. We are not concerned with either, so long as constitutional limitations are not transgressed. When the legislative method is disclosed it may have a definite bearing upon the validity of the result reached, but the judicial function does not go beyond the decision of the constitutional question. * * * And mindful of its distinctive function in the enforcement of constitutional rights, the court has refused to be bound by any artificial rule or formula which changed conditions might upset. We have said that the judicial ascertainment of value for the purpose of deciding whether rates are confiscatory 'is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts'."

Therefore, if the formula intended to be used by the Commission called for an investigation of the reasonableness of the gate rate, and of the reasonableness of the cost to Community and Lone Star of materials purchased for them by Holding Company, and of the reasonableness of the charges for management services contracted from holding company, as each of these items affected the rate base of Community, and if the Commission had the power to make such investigation, we must approve an investigation of these items as being properly within the legislative discretion involved in the proceedings. If an investigation of these items was properly decided upon, the Commission must be consistent

and must make a reasonably complete investigation.

We next consider whether the Commission has authority to make an investigation into the affairs of a foreign corporation, doing interstate business in Oklahoma and a foreign corporation assertedly not doing any business in Oklahoma as a part of the exercise of the Commission's admitted rate-making authority of a foreign corporation admittedly doing intrastate business only in Oklahoma, where an intercorporate relationship exists which renders the three corporations a single unit, in effect, in so far as ownership, officers, management, and purpose is concerned.

We would not treat this question separately in so far as Community is concerned if it were not for the fact that the temporary order entered by the Commission relating to Community has been attacked as being improperly made upon the state of the record. As before stated, the Lone Star and Holding Company both denied the authority of the Commission to make this investigation, and the Community by its argument inferentially does so. For these reasons what we say here is applicable both to Community and Lone Star on their appeals and is applicable to the Commission's asserted authority to investigate Holding Company. In opposition to the Commission's asserted authority to make this investigation is cited the case of State Corp. Commission v. Wichita Gas Co. (U. S.) 78 L. Ed. 500, and the cases cited therein under headnote 2. Whether these cases are authority for this rule is questionable in the face of the opinion of the Supreme Court of the United States in the case of Pennsylvania Gas Co. v. Public Service Commission of New York, 252 U. S. 23, 64 L. Ed. 435. Whatever may be the difference between the holding in these cases, if any, or their analogy to this case, we believe the case of State Corp. Comm. v. Wichita Gas Co., supra, is authority for an investigation by a state rate-making board of integrated corporations, some of which may not be subject to its rate-making powers, for the purpose of ascertaining information to be used in arriving at the rate base of companies subject to its rate-making powers. If there is any doubt upon this question, it is settled in the opinion of the Supreme Court of the United States in Western Dist. Co. v. Public Service Commission, 285 U. S. 119, 76 L. Ed. 655. In that case a company doing an intrastate business, as Community is here, applied for an increase in its burner-tip rates. It purchased all of its natural gas at city gates from a pipe line company doing interstate business, as Lone Star is here. Both of those companies bore the relation to a foreign corporation that Community and Lone Star do to Holding Company herein. The Public Service Commission of Kansas called for information as to the interstate pipe line company and the holding company just as the Commission seeks information about Lone Star and Holding Company in this case. This information was refused by the applicant and the application was thereupon dismissed. Upon appeal to the Supreme Court of the United States, that court said:

"First. The appellant asserts that the rate charged by the pipe line company for gas delivered at the city gate is an interstate rate and not the subject of regulation by any state authority. The soundness of this contention is conceded by the appellees. But the appellant argues that any inquiry by the State Commission into the reasonableness of this charge amounts to an indirect attempt at regulation, an effort on the part of the state to circumvent the paramount federal authority over interstate commerce, and hence an attempt to do by indirection what is forbidden by the federal Constitution.

"The appellees disclaim any intent to control rates charged for interstate service, but say that as the Commission's function is to set reasonable rates for the intrastate service rendered by appellant in the city of Eldorado, this necessarily requires a determination of the question whether the price paid for the gas distributed is fair and reasonable. To this end the Commission insists upon its authority to make such investigation as will satisfy it upon this point. Having in mind the affiliation of buyer and seller and the unity of control thus engendered, we think the position of the appellees is sound, and that the court below was right in holding that if appellant desired an increase of rates it was bound to offer satisfactory evidence with respect to all the cost which entered into the ascertainment of a reasonable rate. Those in control of the situation have combined the interstate carriage of the commodity with its local distribution in what is in practical effect one organization. There is an absence of arm's length bargaining between the two corporate entities involved, and of all the elements which ordinarily go to fix market value. The opportunity exists for one member of the combination to charge the other an unreasonable rate for the gas furnished and thus to make such

unfair charge in part the basis of the retail rate. The state authority whose powers are invoked to fix a reasonable rate is certainly entitled to be informed whether advantage has been taken of the situation to put an unreasonable burden upon the distributing company, and the mere fact that the charge is made for an interstate service does not constrain the Commission to desist from all inquiry as to its fairness. Any other rule would make possible the gravest injustice, and would tie the hands of the state authority in such fashion that it could not effectively regulate the intrastate service which unquestionably lies within its jurisdiction. * * *"

The facts existing and presented to the Commission show that Community purchased all of its natural gas from Lone Star; that both of these companies were owned to the extent of 95 per cent. of each by Holding Company; that Holding Company acted as purchasing agent for each of these companies; that there was some indication (not entirely established for a lack of evidence, but which evidence could only be furnished by Holding Company) of an unreasonable discrepancy between the cost price to Holding Company of materials purchased and the price charged to Lone Star and Community on what at most was a mere bookkeeping transaction between the three companies; and that Holding Company received from each of the other companies payments of money for accounting, financial, engineering, purchasing, and general services. The cost of materials and management services to Lone Star entered into its rate base, and a portion thereof was passed on to Community. The cost of materials purchased by Community and of management services rendered to it entered into its rate base. Therefore, there was ample evidence of such unification of a business affected with a public interest in Oklahoma as to justify the Corporation Commission in determining rightfully that it legally had the power to make such an investigation.

In the Kansas case the Public Service Commission was authorized by a statute (chapter 239, S. L. 1931) to investigate affiliates of public service companies subject to its control. We have no such statute nor any need of one. Article 9, secs. 15-34, Constitution of Oklahoma, is ample authority for this investigation of affiliates of public service companies as therein defined. See, also, chapter 93, S. L. 1913.

It is probable that Community as a separate, responsible corporate entity submitted to the Commission all of the evidence which was within its possession or control. The same is true of Lone Star. Community complains that the temporary rate established is confiscatory. It may also contend that it has furnished to the Commission all the evidence which it can furnish and that it is faced with a confiscatory temporary order, and it therefore has no remedy at law. The Commission, in the exercise of its rate-making powers, and this court upon appeal therefrom are not to be blinded to the situation. They will look through the form to the substance. In fact, the record shows that a large per cent. of the stock of Community and Lone Star is owned by Holding Company. Every day knowledge of corporations, their organization, operation, and benefits sought teaches that they are organized and operated by and for the stockholders and for the benefit of the stockholders. This common sense result was recognized by the Supreme Court of the United States in Western Dist. Co. v. Public Service Commission, supra, when argument was advanced as to why certain uncontroverted averments regarding inability to get gas elsewhere or at a lower rate should stand taken as true, and it said:

"This might well be true were it not for the fact of unity of ownership and control of the pipe line and the distributing system. An averment of negotiation and effort to procure a reduction in the wholesale rate means little in the light of the fact that the negotiators are both acting in the same interest—that of the holding company, which controls both."

Therefore, when Community says that it has submitted to the Corporation Commission all of the evidence it can submit, it has stated the truth only partially. When it states that its property is being confiscated and it is without relief or protection, such statement is only partially true. Those who now own and control Community, and who hope to reap benefits therefrom, can furnish and must furnish to the Commission the evidence which will enable it to make orders to avoid such an end. The hands of the state's rate-making body and state's courts are not to be tied by artificial barriers set up in the form of holding companies, organized and kept elsewhere, which seek to reap the benefits or profits earned under rates established for public service companies in Oklahoma and at the same time deny the state's rate-making body and the state's courts the information which they deem necessary to the determination of proper permanent rates. The unfairness and untenability of Community's contention in this respect is apparent.

In the case of Western Dist. Co. v. Public

Service Commission, supra, the application for increased rates was based upon the fact that the existing rates were inadequate and amounted to confiscation. But upon refusal on the part of the applicant (in reality on the part of its controlling company) to furnish evidence needed in the efforts to rectify this alleged condition the application was dismissed, and it was held that the applicant was not entitled to equitable relief under the circumstances. Because the Commission's powers are invoked in this instance by the consumer rather than the public service company does not alter the reason back of the rule or the rule to be applied. If Community is being punished by this order or is suffering or likely to suffer ruinous consequences, its stockholders have within their possession and control the means of obviating such an end. In Dayton P. & L. Co. v. Public Utilities Commission (U. S.) 78 L. Ed. 1267, the Supreme Court of the United States says:

"Even so, the burden of proof was on the buyer of the gas to show that in these transactions with the affiliated seller the price was no higher than would fairly be payable in a regulated business by a buyer unrelated to the seller and dealing at arm's length. Western Distributing Co. v. Public Service Commission, 285 U. S. 119."

Much argument has been indulged in in the briefs as to the character of this appeal: that is to say, whether this court acts in a judicial capacity or in a legislative capacity in passing upon this record. Because the order entered is temporary, because the questions to be considered herein are practically all of law for the guidance of the Commission, and because our determination hereof necessarily cannot result in a final legislative act, we decline to pass upon that question in this appeal.

Heretofore we have approved all the Commission has said and done, in so far as it determined the formula it desired to follow, determined the temporary rate, and found the necessity of a complete investigation and disclosure of the intercorporate relations. If the Commission was unable to enter a final order upon the record presented to it, necessarily we cannot enter a final order here, but must treat this appeal as being merely for the purpose of guidance as to the rules of law applied and to be applied by the Commission in the proceedings; and having so determined this, we must remand the proceedings to the Commission for further prosecution in keeping with the expressions herein contained. However, before doing so it is necessary to notice certain other acts of the Commission as disclosed in this record which do not meet our entire approval.

The order entered by the Commission purports to direct the Lone Star to establish a gate rate for Community. It also purports to control the expenditures to be made by Community for its operations.

The powers of the Commission are to regulate, supervise, and control the public service companies in their services and rates, but these powers do not extend to an invasion of the discretion vested in the corporate management. It does not include the power to approve or disapprove contracts about to be entered into nor to approve or veto the expenditures proposed. The powers of the Commission, as respects the acts of public service companies, are limited to an investigation of these acts to determine whether or not they have a reasonable and fair effect upon the rights of the public and to take steps to avoid an unreasonable or unfair or prejudicial effect upon the public rights, if such be found.

To give an illustration of what we mean. The Commission had no power to prohibit the unification of the companies involved herein, and has no power to dissolve their relationship. It had no power of inspection or approval of the contracts between these companies. But now that such contracts are made and are put forward as establishing certain rights upon the part of contracting parties, the Commission may ascertain their effect upon the public rights and approve, modify, or reject such effect if found to be unreasonable, unfair, or prejudicial. To be even more concrete: The Commission may have in the past, or may even now, establish a rate base for Community which would enable it to earn a return of 10 per cent. per annum upon an entirely satisfactory valuation of its property, but the Commission may not go further and insist upon Community declaring dividends in keeping therewith. That is a matter for the discretion of corporate management. Suppose that Holding Company, which owns 95 per cent. of Community's stock, desired to make exactions from Community for service rendered to Community which would consume the profit contemplated by such a return, in order to enhance the profitableness of Holding Company's relations with Community and increase the dividends which Holding Company might pay to its stockholders: such decision would be no concern of the Commission. But if it does this, Community then cannot come before the Commission and ex-

hibit the contractual relations between it and Holding Company and ask for an increase of rates because the disposition of its income from the established rate does not permit it to have a profit or declare a dividend. In such case the Commission may and should determine whether or not the payments contracted to be made by Community to Holding Company from the income derived from this established rate were unreasonable or prejudicial to public rights. Springfield G. & E. Co. Case, 291 Ill. 209, 125 N. E. 891; Missouri ex rel. S. W. Bell Tel. Co. v. Public Service Comm., 262 U. S. 276, 67 L. Ed. 981; O. G. & E. Co. v. Oklahoma Natural Gas, 85 Okla. 25, 205 P. 768.

In this connection we desire to call attention to the manner in which the Corporation Commission of Kansas worded its order and exercised its powers in the investigation resulting in the appeal in the case of State Corp. Commission v. Wichita Gas Co., supra. The text of the pertinent part of the order entered therein is:

"1. That on and after the first day of September, 1932, the distributing companies, respondents above named, shall cease to set up on their books as an expense item any payments made to Henry L. Doherty & Co. under the contract above mentioned, because of the 1¾% charge, and also any payments made to City Service Gas Company for main line town border gas in excess of 30c per M. C. F., and should give no consideration to any such payments in fixing a rate for the domestic consumer."

This was not an attempt to order the distributor not to pay such sums of money, but rather was an order not to charge, as an item of expense, a sum in excess of the figure found to be the reasonable cost of gas purchased at the city gate. This is a distinction of vital importance in rate-making. The rate making body makes calculations entering into a rate base designed to produce an adequate return. What the company does with its income is no concern of the rate-making body, so long as a full and complete disclosure thereof is made when called for in order that its effect under all of the circumstances may be judged properly.

The Supreme Court of the United States in Dayton P. & L. Co. v. Public Utility Commission of Ohio, supra, noticed the same design in the action of the Ohio Commission in the following observation:

"The contract between the appellant and the Ohio Fuel Gas Company called for payment at the rate of 45c per thousand cubic feet; the Commission found this price to be excessive to the extent of 6c, thereby reducing to 39c the allowance to be made as a proper operating expense."

Therefore the findings and temporary order of the Commission must be modified in language and purport in this respect and its future orders herein must conform to this rule of law.

Orders entered as to reasonableness of expenditures may indirectly affect or modify or even abrogate the contracts of Community with Lone Star and Holding Company, but this effect is legal and constitutional. Arkansas Nat. Gas Co. v. Arkansas Railroad Comm., 261 U. S. 379, 67 L. Ed. 705. The power of the Commission over rates cannot be defeated by contract between a public service company and its consumers. American Indian Oil & Gas Co. v. Collins, supra. Public service corporations may enter into contracts between themselves, but may not thereby defeat or avoid the inquiry of the Commission into them and their effect for purposes of regulation, supervision, and control of services and rates of public service companies under our Constitution, O. G. & E. Co. v. Oklahoma Natural Gas Co., supra, and O. G. & E. Co. v. Wilson & Co., 146 Okla. 272, 288 P. 316. A company doing an interstate business may not contract with a public service company doing an intrastate business in Oklahoma and subject to the powers of the Corporation Commission of Oklahoma, regarding matters affecting the intrastate company's service or rates, and thereby defeat the Commission's power over the intrastate company, on the ground either of impairment of contract or interference with interstate commerce. Western Dist. Co. v. Public Service Commission, supra.

Another portion of the findings and temporary order relates to the disposition of the savings of 10c per M. C. F. asserted to have been effected by the reduced charge for the gas purchased. Community asserts that the order passing such asserted savings on to the burner-tip is arbitrary and capricious when it assumes or finds that the reduction resulted in savings. The Commission asserts that the reduction is bound to result in savings, for when the operating expenses are reduced by reason of the reduced charge for gas purchased the result is an automatic unearned increase in the profit resulting from sales in a like sum; and that this, by right, should pass on to the consumer.

We cannot agree with the Commission that such a charge is in all instances, or even in this instance likely to be, a savings. To say so would mean that every thousand cubic feet of gas purchased would in turn be sold, or, in other words, that the gas purchases

and sales would be equal. This may not always be so. It is not called to our attention herein as being true as a matter of fact. Some allowances in a rate base are calculated upon a percentage, as applied to operating charges and to income. Increases or decreases therein must be adjusted to avoid distortion. A complete investigation of the effect should be made before a permanent order is made regarding the disposition of the reduction, if it finally be ordered. It is possible that the theory of the Commission may prove true, but its truth must be made to appear from facts, not argument.

However, in this instance the Commission has expressed its inability to make a permanent order because of a lack of complete evidence and information. The record bears out this finding. Its order is stated to be temporary. What we have heretofore said regarding the inability of the Commission to secure this evidence, and of the duty of Community, or its overlord, Holding Company, to furnish this information applies here. We are not going to interfere with this temporary order because of their disagreement with the rule of law applied, for upon final order the matter can be adjusted in keeping herewith. The 10c per M. C. F. reduction in gas cost charge may be passed on to the burner-tip, under this record, as a temporary measure, pending complete investigation.

In so holding it must be borne in mind that the proceedings herein were instituted on behalf of the consumers of the gas for the purpose of having the rates decreased, and the Community has only asked that its rates be raised since the hearing has been instituted. Therefore, we are of the opinion that, since the Holding Company has refused to submit its records to the Corporation Commission for the purpose of supplying the information the said Commission deems necessary in order to determine the proper permanent rate to be charged, the reasoning of the Supreme Court of the United States in Western Dist. Co. v. Public Service Commission, supra, is applicable herein.

Therefore, in so far as Community is concerned, the proceedings are remanded to the Commission with directions: First, to continue in force and effect the temporary order in so far as its findings and order establishes 30c per M. C. F. as being a reasonable item of expense to be set up on its books for gas purchased; and in so far as it passes on to the consumer the reduction of 10c per M. C. F.; second, to proceed to set the matter for further hearing and to take such further

testimony to supplement and complete the record before us as it may deem necessary and then to enter a final order upon all of the evidence; third, to order Community to put into effect at once the temporary burner-tip rate having a reduction of 10c per M. C. F. to the consumer as a temporary rate pending the permanent rate, and to at once make refunds to its consumers for the excess collected since the order was entered and pending this appeal, for which it gave a suspending bond; fourth, not to grant further supersedeas against the effect of said temporary order unless the Community (and by Community we mean as well Holding Company) shall at once and in good faith produce the evidence desired by the Commission; whereupon, this portion of this order may be suspended further upon the giving of adequate suspending bond conditioned to refund to Community's consumers any excess collected in the meantime as determined by the final order.

We next take up the appeal of Lone Star and will discuss such of the four propositions advanced by it as we deem necessary.

Proposition No. 1 reads:

"The order of the Commission herein does not now and will not in the future enable the Lone Star to earn a fair annual rate of return on the present fair value of its property and business used and useful in the public service, and said order will operate to take said property for public and private use without due process of law or just compensation."

This proposition is argued under a number of divisions and subdivisions all pertaining to the ascertainment of the present fair value of this property for rate purposes.

Because the evidence which the Commission desired in order that it might be fully advised has been withheld from the Commission by Lone Star's master, Holding Company, and because the record before the Commission and before us is not complete, it is impracticable to do more than comment upon some of the rules of law applicable and the elements which have entered into the formula adopted by the Commission; and to reserve final judgment upon this formula until the final and permanent order of the Commission is made and the matter is certified here again.

When the argument of Lone Star is regarded as a whole, and the evidence which it introduced is considered in its true light, Lone Star practically bases its asserted present fair value upon reproduction cost new, less depreciation, plus certain other allow-

300

ances. There are earlier cases, and perhaps some of the Oklahoma cases, in which the courts used language to indicate that the reproduction cost new, less depreciation, plus other allowances was the most practical formula to be used. However, this theory has been abandoned by the Supreme Court of Oklahoma, and we now hold that reproduction cost new, etc., is merely one of a number of elements which the Commission should consider in arriving at present fair value. Oklahoma Natural Gas Co. v. Corporation Commission, 90 Okla. 84, 216 P. 917; American Indian Oil & Gas Co. v. City of Poteau, 108 Okla. 215, 235 P. 906; McAlester Gas & Coke Co. v. Corporation Commission, 102 Okla. 118, 227 P. 83; Pressure Oil & Gas Co. v. Tri-City Gas Co., 108 Okla. 248, 236 P. 41; Western Oklahoma Gas & Fuel Co. v. State, 113 Okla. 126, 239 P. 588. To the same effect are the opinions of the Supreme Court of the United States: Georgia Railway & Power Co. v. Railway Commission, 262 U. S. 625, 67 L. Ed. 1144, and cases cited therein. Therefore, in so far as the Lone Star attempts to make this the only method to be used, or even the principal one to be applied, it is in error and the Commission was correct in declining to be so restricted in its method of determination.

In our opinion the Commission was clearly correct in demanding information about Holding Company as to the prices of materials as they enter into the physical set-up of Lone Star, and the year to year replacements, repairs, and additions. As was said in our opinion on the appeal by Community, there was an indication that there might be shown to have existed and to exist an unreasonable margin of profit in favor of Holding Company when taken into consideration in establishing the present fair value for a rate base in rate-making proceedings.

The Commission in giving effect to labor rates applied a rule which would require Lone Star and Community to both employ labor at distress rates. It made all estimates which entered into its findings upon distress labor prices. This is not only incorrect as a matter of law, but is contrary to the best business principles of the present day economic scheme. The rule of what is fair and reasonable, and in keeping with the labor market price and demands, applies here as it would to the cost of anything else entering into the formula. Therefore, it is the duty of the Commission, upon further consideration of this matter, to abandon its rule of distress labor price and to take evidence and make its findings and orders avoiding extremes or conditions brought about by abnormalities.

There is nothing further in the Lone Star's discussion of proposition No. 1, or the divisions or subdivisions of divisions, that we need notice further in view of the fact that the order entered by the Commission is temporary and this matter is being remanded to the Commission for further proceedings leading to the establishment of a permanent rate.

Lone Star has outlined an argument in its brief, touching this first proposition, covering reproduction cost new, including physical property, labor rates, material prices; general and undistributed costs, including preliminary and organization expense, engineering and supervision, administration and legal expenses, interest during construction, and taxes during construction; working capital; going value; per cent. condition of new; and others not necessary to enumerate. We have corrected the Commission's applied rule as to labor rates. We have not noticed the others by direct discussion because it is possible that additional evidence may call for reconsideration of these items, if this matter is again called to our attention. We do request the Commission, however, to notice and apply to these items, and all others, the rules of evidence and law announced by the Supreme Court of the United States in the case of Dayton P. & L. Co. v. Public Util. Com. of Ohio, supra, and Lindheimer et al. v. Illinois Bell Tel. Co. (Illinois Bell Tel. Co. v. Lindheimer et al.) (U. S.) 78 L. Ed. 1182, both of which were only recently decided. Practically all of the argument of Lone Star is directed to questions arising under the federal Constitution.

We will discuss propositions Nos. 2 and 3 together, and they are as follows:

"2. The action and order of the Commission unlawfully burdens and interferes with interstate commerce.

"3. The Commission erred in holding that the Lone Star Gas Corporation is a necessary or proper party to this proceeding and that it has jurisdiction over it."

What we have said in our opinion on the appeal of Community regarding the right of the Corporation Commission to investigate into the intercorporate relationship of these three corporations is based upon the opinions of the Supreme Court of the United States and need not be repeated here. That discussion is applicable here. In so far as the Commission deems it necessary to investigate Lone Star and Holding Company for the purpose of obtaining information upon which to base rates for Community, it is legal and constitutional for it to do so.

The Commission presents authority from

which it may be argued that where there is a unification and intermingling of intrastate and interstate companies and intrastate businesses and interstate businesses, direct state regulation is proper and necessary and is as much defensible as indirect regulation thereof. Especially do they argue that, while this field is exclusively within the domain of the Congress of the United States, it not having acted, the state may exercise that control in so far as is necessary. and until the Congress does act. We are not prepared to go to that extent in this opinion, because we do not know what the evidence in this case will show concerning the extent to which these companies are intermingled into what may be called a single unit, and we reserve this particular question until the Commission has completed its further proceedings and the matter comes here for final determination.

In any event, as the temporary order of the Commission was worded it indicated an intent, or at least a tendency, to effect a direct regulation of Lone Star's gate rate. However, since we have ordered this temporary order and its language, purport, and tendency modified merely to set up a formula of reasonableness of expenses on the part of Community, we believe that any objection of Lone Star thereto is obviated at this time.

Lone Star's proposition No. 4 will not be discussed at this time for the reason it involves a consideration of the proceedings of the Commission as a whole upon a final and permanent order herein which was not made by the Commission because of the state of the record. We will not notice it further.

Therefore, this proceeding, in so far as it affects Lone Star, is remanded, with directions to proceed in its investigation of Lone Star and Holding Company in so far as any information to be elicited from them concerning their relations with Community is material to the determination of the permanent rate to be established for Community.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL and WELCH, JJ., concur. ANDREWS and OSBORN, JJ., dissent. BUSBY. J., not participating. McNEILL, J., not voting.

---

OSBORN, J. (dissenting). I dissent from the majority opinion, for the reason that said opinion ignores plain mandatory provisions of the Constitution.

This case presents two appeals: No. 24995, Lone Star Gas Company v. Corporation Commission, and No. 24996, Community Natural Gas Company v. Corporation Commission. These appeals arise from certain orders of the Corporation Commission in cause No. 10777. The proceedings originated before the Commission on November 28, 1930, by the filing of a petition by certain citizens of Walters, Okla., to cause the Corporation Commission to fix the burner-tip rate charges by the Community Natural Gas Company, the distributing company in said municipality of natural gas to consumers, and to require a reduction in said rates. Thereafter all, or practically all, the towns served by the Community Natural Gas Company intervened in said proceedings. After repeated hearings and after the taking of voluminous testimony, the Commission, on March 9, 1933, made extensive findings of fact, concluding with an order in substance providing two things: First, that from said date the Community Natural Gas Company pay to Lone Star Gas Company only 30 cents per M. cu. ft. instead of 40 cents per M. cu. ft. as the gate rate for gas distributed to its patrons within the state of Oklahoma; second, that the reduction of 10 cents per M. cu. ft. ordered as hereinabove set forth be passed on to the domestic consumers of Community Natural Gas Company, and that the Community Natural Gas Company reduce its burner-tip rate to its domestic consumers by 10 cents per M. cu. ft.

The Commission found that the Community Natural Gas Company, the Lone Star Gas Company, and the Lone Star Gas Corporation were allied companies, each independently organized, but each of the two former companies being owned almost exclusively and controlled by virtue of ownership of its voting stock by the holding company, the Lone Star Gas Corporation, a foreign corporation not authorized to do nor doing business within the state of Oklahoma. The Commission further found that the Lone Star Gas Company was a foreign corporation authorized to do business within this state and engaged in transporting gas interstate for distribution at the gates of various cities served by Community Natural Gas Company as local distributor of gas to consumers.

Elaborate findings of fact touching the value of Lone Star Gas Company, and a proper income for the invested capital of said company, were made by the Commission, whereby the Commission arrived at the conclusion that after reducing the gate rate for gas at the city gates from 40 cents per M. cu. ft. to 30 cents per M. cu. ft., the Lone

Star Gas Company would still have an income sufficient to yield a fair income on the fair and reasonable value of its invested capital. Accordingly the Commission made an order reducing the gate rate from 40 cents per M. cu. ft. to 30 cents per M. cu. ft. and directed that the Lone Star Gas Company place said rate into effect, and that the Community Natural Gas Company pay no more than the reduced rate so fixed.

Although much evidence was introduced relating to proper and fair valuation of the invested capital of Community Natural Gas Company, and to the operating expense and gross and net income thereof, the Commission made no finding of fact whatever as to the value of the invested capital, or rate of return of the Community Natural Gas Company but, without such finding of fact, ordered and directed that the Community Natural Gas Company forthwith put into effect a ten cents per M. cu. ft. reduction of its rates to domestic consumers for gas furnished by it.

The theory of the Commission is that by automatically reducing the cost of gas at the city gate by an order effective against the Lone Star Gas Company, thereby reducing the operating expense of the Community Natural Gas Company by ten cents per M. cu. ft., the order is not detrimental to the Community Natural Gas Company, in that it does not decrease its net operating income. In other words, the Commission's theory is: We have saved you (Community Natural Gas Company) ten cents per M. cu. ft. on the gas that you buy, thereby reducing your expense, and if we pass this saving on to the consumer, you will not be injuriously affected.

There would be merit in this theory of reduction of the rates of Community Natural Gas Company if the Commission had power, authority, and jurisdiction to order a reduction in the cost of gas at the gate to be paid by Community Natural Gas Company to the Lone Star Gas Company. But the Commission has no such power or authority. The Lone Star Gas Company is a foreign corporation engaged in interstate transportation of gas, and the sale, transportation, and delivery of natural gas by it to the Community Natural Gas Company constitutes interstate commerce, and the state is without power to prescribe rates or prices charged therefor. State Corporation Commission of Kansas v. Wichita Gas Company et al. (U. S.) 78 L. Ed. 500. This theory of the Commission being fallacious, the results sought to be attained by the order are ineffective,

and the order predicated upon such results must find other support as to its foundation. The order of the Commission purporting to establish a gate rate for Community Natural Gas Company to be charged by Lone Star Gas Company was wholly beyond the jurisdiction of the Commission and is void.

We do not mean to say that the Commission is without power to inquire into the reasonableness of the sum paid as a gate rate in the establishment of a proper charge to the domestic consumers by the Community Natural Gas Company. It is disclosed that the companies are interrelated. The Commission has no power to prohibit the unification of the companies involved herein and no power to dissolve their relationship. It has no power of inspection or approval of the contracts between these companies. The powers of the Commission are to regulate, supervise, and control the public service companies, and their services or rates, but these powers do not extend to an invasion of the discretion vested in the corporate management. It does not include the power to approve or disapprove contracts heretofore, or hereafter to be, entered into between the various companies nor to the approval or veto of expenditures proposed.

The powers of the Commission, as respects the acts of public service companies, are limited to an investigation of its acts to determine whether or not they have a reasonable and fair effect upon the rights of the public and to take steps to avoid an unreasonable, unfair, or prejudicial effect upon the public rights. But when such contracts are put forward in a rate-making proceeding, the Commission may ascertain their effect upon the public rights and approve, modify, or reject such effect if found to be unreasonable, unfair, or prejudicial. The Commission may authorize a rate base for Community Natural Gas Company which would enable it to earn a reasonable return upon its invested capital, but the Commission may not go further and insist upon said company declaring dividends in keeping therewith. Such is exclusively within the discretion of corporate management. If such company sees fit to pay to a holding company unreasonable and unnecessary exactions for insignificant services in order to enable the holding company to pay a dividend to its stockholders, such would be no concern of the Commission. But if the Community Natural Gas Company should unwisely expend its income, and in a rate-making case exhibit its contractual relationships between it and the holding company as a justification

for a greater rate, the Commission may and should determine whether or not the payments so contracted to be made by the Community Natural Gas Company to the holding company were unreasonable or prejudicial to public rights. State Corporation Commission of Kansas v. Wichita Gas Company, supra; Springfield G. & E. Co. Case, 291 Ill. 209, 125 N. E. 891; Missouri ex rel. Southwestern Bell Tele. Co. v. Public Service Comm., 262 U. S. 276, 67 L. Ed. 981; O. G. & E. Co. v. Oklahoma Natural Gas Co., 85 Okla. 25, 205 P. 768; Western Dist. Co. v. Public Service Commission, 285 U. S. 119, 76 L. Ed. 655; Penn. Gas Co. v. Public Service Commission of New York, 252 U. S. 23, 64 L. Ed. 435.

The authority of the Commission to effectuate a reduction of rates by the method used by it being without foundation, we turn to the record in an attempt to justify the reduction on the theory herein set forth as being within the power and authority of the Commission. But at the very outset we are confronted by the lack of findings of fact by the Commission in its order as to the value of the invested capital of the Community Natural Gas Company; of the rate of return which it has heretofore been paying thereon. We find our pathway barred by the provisions of section 22, article 9, of the Constitution, which has heretofore been considered by this court.

In Pioneer Telephone & Telegraph Co. v. Westenhaver, et al., 23 Okla. 226, 99 P. 1019, this court said:

"Section 22 of article 9 of the Constitution (section 234, Bunn's Ed.) provides that on appeal from the Commission to this court the chairman of the Commission under his seal shall certify to this court all the facts upon which the action appealed from was based and which may be essential to a proper decision on appeal, together with such of the evidence introduced before or considered by the Commission as may be selected, specified, and required to be certified by any party in interest, as well as such other evidence introduced or considered as the Commission may deem proper to certify. All the evidence introduced at the hearing before the Commission has been certified to this court by it, but we do not think that the requirements of this section of the Constitution are complied with by certifying alone all the evidence introduced before the Commission. To so hold would clearly result in giving no meaning to that portion of the section which states that the chairman of the Commission shall certify under seal all the facts upon which the order appealed from is based. It is true that neither this section nor any other section of the Constitution in specific language states that the Commission shall make a finding of facts, but this to our mind is clearly contemplated by the language of this section, requiring the Commission to certify all the facts upon which its order is based; for how could the Commission certify the facts without first finding them? This court with all the evidence in the record now before it might proceed to find the facts, and then, applying the law to facts found, determine whether the order of the Commission is reasonable and just, but this is not the procedure contemplated by the provisions of the Constitution. The finding of fact by the Commission is not conclusive upon this court, but it is highly persuasive. If the facts found by the Commission were set out in the record in this case, there might be no difference between counsel as to the facts, and their contentions be reduced to questions of law.

"In order to pass upon the questions presented to this court by this appeal, it is necessary to know the value of the property employed by appellant in its exchange at Enid, the expense of operating said exchange, the amount of expenditures required to keep it in repair, and the depreciation, if any, in the property of the company, and the income or probable income which the company will receive from the rates fixed by the Commission. These facts may have been found by the Commission before making the order appealed from, but they do not appear in the record, and they are necessary to the consideration by this court of the questions involved in the appeal. The same section of the Constitution above referred to provides that the order of the Commission appealed from shall be regarded as prima facie just, reasonable, and correct, but the court may. when it deems it necessary in the interest of justice, remand to the Commission any case pending on appeal, and require the same to be further investigated by the Commission and reported upon to the court before the appeal is finally decided. If the Commission made no finding of facts upon which it based its order, it should have done so; and if it did make such finding of facts, the same should be before this court to aid and advise it in its consideration of the case on appeal."

In Muskogee Gas & Electric Co. v. State et al., 81 Okla. 176, 186 P. 730, this court reversed a temporary rate order made by the Corporation Commission because the Commission had failed to make findings of fact upon which such order was based. In this connection the court said:

"But an examination of the record fails to disclose the facts upon which the order is made, and the court is therefore without a basis to determine the weight of the evi-

dence. The requirement of section 22, article 9, Constitution, that the Commission certify on appeal all the facts upon which the order appealed from was based, and which may be essential for the proper decision of the appeal, as well as a written statement of the reasons upon which the action appealed from was based, is not fulfilled by certifying the evidence and an order which states merely the conclusions reached by the Commission. A., T. & S. F. Ry. Co. v. Love, 23 Okla. 192, 99 P. 1081; K. C. S. Ry. Co. v. Love, 23 Okla. 224, 100 P. 22; Pioneer T. & T. Co. v. Westenhaver et al., 23 Okla. 226, 99 P. 1019; Midland Val. R. Co. et al. v. State, 24 Okla. 817, 104 P. 1086; A., T. & S. F. Ry. Co. et al. v. State, 47 Okla. 645, 150 P. 108."

In the case of Atchison, T. & S. F. Ry. Co. et al. v. State, 47 Okla. 645, 150 P. 108, it is said:

"But this cause must be remanded. This for the reason that, while the evidence before the Commission is before us, there is no finding of facts upon which the order appealed from is based certified to us, as required by article 9, section 22, of the Constitution. This being the state of the record, the cause is remanded to the Commission, with directions to take additional evidence should the Commission see fit so to do, and to find the facts upon which the order is based and certify the same to this court. * * *"

In the recent case of Florida v. United States, 282 U. S. 194, 75 L. Ed. 291, Mr. Chief Justice Hughes, in announcing the opinion of the court, used the following language:

"The Commission made no findings as to the revenue which has been derived by the carrier from the traffic in question, or which could reasonably be expected under the increased rates, or that the alteration of the intrastate rates, would produce, or was likely to produce, additional income necessary to prevent an undue burden upon the carrier's interstate revenues and to maintain an adequate transportation service.

"The question is not merely one of the absence of elaboration or of a suitably complete statement of the grounds of the Commission's determination, to the importance of which this court has recently adverted (Beaumont, S. L. & W. R. Co. v. United States, decided November 24, 1930, 282 U. S. 74, ante, 221, 51 S. Ct. 1), but of the lack of the basic or essential findings required to support the Commission's order. In the absence of such findings, we are not called upon to examine the evidence in order to resolve opposing contentions as to what it shows or to spell out and state such conclusions of fact as it may permit. The Commission is the fact-finding body, and the court examines the evidence not to make findings for the Commission, but to ascertain whether its findings are properly supported." (75 L. Ed. p. 304.)

In the case of Oklahoma City v. Corporation Commission, 80 Okla. 194, 195 P. 498, it is said:

"The first essential in fixing rates is to determine the value of the property, and then determine whether the rate is reasonable. The commissioners are permitted to take into consideration the depreciation, repairing, and numerous other items in determining what is fair and reasonable in fixing a rate, but it is always essential that the value of the property be determined. As to the value of the property, the finding of the Commission is as follows: 'The Commission is not at this time prepared to express an opinion as to the fair, reasonable value of the property now used and useful in serving the patrons of the Oklahoma Natural Gas Co.' If this is a rate, the Commission failed to find the value of the property, which is absolutely essential and necessary before the Commission can fix a rate."

In the case of Tulsa Tribune Co. v. Oklahoma Natural Gas Co., 126 Okla. 280, 261 P. 213, it is said:

"Under section 22, article 9, of the Constitution: '* * * The action of the Commission appealed from shall be regarded as prima facie just, reasonable, and correct.' See A., T. & S. F. Ry. Co. v. Miller, 28 Okla. 109, 114 P. 1104; A., T. & S. F. Ry. Co. v. State, 28 Okla 476, 114 P. 721.

"We are of the opinion that, inasmuch as the Corporation Commission was in progress of a trial involving the value of the property used and useful in supplying gas to the city of Tulsa, together with other cities and towns, and in the absence of evidence that the respondent company was earning more than that allotted to it as a fair return on its valuation, the Commission was without authority to make a temporary rate in advance of a determination of the value of the property used."

See, also, Southwestern Cotton Oil Co. v. Farmers' Union Co-op. Gin Co., 165 Okla. 31, 24 P. (2d) 658.

Section 18 of article 9 of the Constitution provides in part:

"Before the Commission shall prescribe or fix any rate, charge, or classification of traffic, and before it shall make any order, rule, regulation, or requirement directed against any one or more companies by name, the company or companies to be affected by such rates, charge, classification, order, rule, regulation, or requirement shall first be given by the Commission, at least ten days' notice of the time and place when and where the contemplated action in the prem-

ises will be considered and disposed of, and shall be afforded a reasonable opportunity to introduce evidence to be heard thereon, to the end that justice may be done, and shall have process to enforce the attendance of witnesses."

We have called attention to some of the above cases for the reason that it is contended that the order under consideration herein is, as recited in the order, only temporary, and the Commission recited in its order that it did not have the necessary facts before it to make a permanent order. Justification of the order is sought for this alleged reason. Whether the order is temporary or permanent in character, we deem it unnecessary to determine. We can perceive no reason why, as the basis of an order, even of a temporary character, the Commission should not make, as provided by the Constitution, findings of fact and reasons for the order so made. Such findings of fact, and the order of the Commission, will, by virtue of the Constitution, be regarded by this court as prima facie just, reasonable, and correct. Such findings are necessary to enable this court to weigh the evidence, and to determine whether or not said findings are contrary to the weight of the evidence, or whether or not said findings are supported by any evidence. The provisions of the Constitution have been given effect by this court in its uniform holdings since statehood. The findings of fact in this case are elaborate as to the Lone Star Gas Company, as to which the Commission had no jurisdiction. There are no findings as to the Community Natural Gas Company as required by the Constitution, and even though this order be treated as temporary, the Constitution, as many times construed by this court, requires the Commission to predicate such order upon findings of fact which, when taken as prima facie just, reasonable, and correct, will support said order.

In the case of Chicago, R. I. & P. Ry. Co. v. State, 117 Okla. 175, 245 P. 656, this court held:

" 'The prima facie presumption of the reasonableness, justness, and correctness of an order of the Corporation Commission, obtaining by reason of section 22, art. 9, of the Constitution, applies only to the facts found by the Commission, or established by evidence upon which the Commission failed to make a finding; and where a fact material to the reasonableness, justness, and correctness of an order is lacking in the finding of facts made by the Commission, and is not supplied by the evidence, the presumption obtaining by reason of said

section does not apply, and on review in this court such order cannot be sustained.' St. L. & S. F. Ry. Co. v. Newell et al., 25 Okla. 502, 106 P. 818; C., R. I. & P. Ry. Co. et al. v. State et al., 24 Okla. 370, 103 P. 617, 24 L. R. A. (N. S.) 393; A., T. & S. F. Ry. Co. v. State, 23 Okla. 210, 100 P. 11, 21 L. R. A. (N. S.) 908; A., T. & S. F. Ry. Co. v. State et al., 23 Okla. 510, 101 P. 262; Okla. Natural Gas Co. v. Corporation Commission, 90 Okla. 84, 216 P. 917."

In Interstate Commerce Commission v. Louisville & Nashville Ry. Co., 227 U. S. 88, 57 L. Ed. 431, the government contended that because the law attached validity, prima facie, to the orders of the Interstate Commerce Commission, the failure of said Commission to specifically find facts in support of its conclusions could not render void its order. In answering that argument the court said:

"But the statute gave the right to a full hearing, and that conferred the privilege of introducing testimony, and at the same time imposed the duty of deciding in accordance with the facts proved. A finding without evidence is arbitrary and baseless. And if the government's contention is correct, it would mean that the Commission had a power possessed by no other officer, administrative body, or tribunal under our government. It would mean that, where rights depended upon facts, the Commission could disregard all rules of evidence, and capriciously make findings by administrative fiat. Such authority, however, beneficently exercised in one case could be injuriously exerted in another, is inconsistent with rational justice, and comes under the Constitution's condemnation of all arbitrary exercise of power."

It would be a vain thing for the Constitution to provide that a respondent company, before the Commission can prescribe or fix a rate, shall be afforded a reasonable opportunity to introduce evidence and to be heard thereon, to the end that justice may be done, and then to permit the Commission, after a proceeding had been in progress for four years and thousands of pages of testimony had been adduced, with no further hearing scheduled to take place therein within any definite and reasonable time. to enter a temporary order which might be as disastrous to the respondent company as a permanent order might be. In this connection we desire to call the attention of the Commission to the language used by the Supreme Court of the United States in the case of Prendergast v. New York Tele. Co., 67 L. Ed. 853, as follows:

"Nor did the fact that the orders of the

Commission merely prescribed temporary rates, to be effective until its final determination, deprive the company of its right to relief at the hands of the court. The orders required the new reduced rates to be put into effect on a given date. They were final legislative acts as to the period during which they should remain in effect pending the final determination; and if the rates prescribed were confiscatory, the company would be deprived of a reasonable return upon its property during such period, without remedy, unless their enforcement should be enjoined. Upon a showing that such reduced rates were confiscatory, the company was entitled to have their enforcement enjoined pending the continuance and completion of the rate-making process. Cumberland Telep. & Teleg. Co. v. Louisiana Pub. Service Commission, supra. And see, by analogy, Oklahoma Natural Gas Co. v. Russell, supra; and Love v. Atchison, T. & S. F. Ry. Co., 107 C. C. A. 403, 185 Fed. 321, 326, affirming 174 Fed. 59, and 177 Fed. 493. If the Commission, however, had fixed an early date for the final hearing, this might have been taken into consideration by the court as an element affecting the exercise of its discretion in the matter of granting an interlocutory injunction. Cumberland Telep. & Teleg. Co. v. Louisiana Pub. Service Commission, supra, p. 217. But, in the present case, the Commission was still continuing indefinitely its general investigation, and had not fixed any date for the final hearing."

In the case of Love v. Atchison, T. & S. F. Ry. Co., 185 Fed. 321 (certiorari denied) 220 U. S. 618, it is said:

"It is as clearly a violation of the Constitution, and one as promptly remediable in the national courts, to take the property of a railroad company without just compensation by the enforced operation of tentative rates during the process of their making as by the operation of final rates after that process is complete. Railroad companies that have been, are, or will be deprived of parts of their property devoted to the public use of transportation without just compensation during the continuance of the rate-making process by provisions of a state Constitution, or of a state law, or by orders of a state commission, prescribing tentative rates and putting them in effect during the rate-making process under severe penalties, may maintain suits for and obtain relief by injunction during the continuance of the rate-making process to the same extent that they may after the process is completed."

See, also, Indiana Gen. Serv. Co. v. McCardle, 1 F. Supp. 113, and Rockland Light & Power Co. v. Maltbie, P. U. R. 1933E, 113.

The voluminous record in this case, consisting of more than 5,000 pages, fully justifies the wisdom of the provisions of the Constitution requiring findings of fact by the fact-finding body—the Commission—to the end that this court will not be required to search out the basic facts in determining the propriety of the Commission's order.

Voluminous briefs have been filed herein by the appellants and on behalf of the Commission. In appellant's brief it is said:

"In its brief the Commission wholly fails to touch upon any of the facts which were developed in this case in respect to the Community Natural Gas Company's property values, the amounts available for depreciation, federal taxes, and return thereon, or what would constitute a fair and reasonable return to it. Indeed, it is by evading these essential facts that the Commission hopes to have its order reducing the rates charged by the Community Natural Gas Company to its domestic consumers affirmed. We submit that the Commission cannot face the facts in this case and at the same time show any justification whatsoever for its action in reducing the burner-tip rates of the Community. In our original brief we pointed out that the Commission's engineers and accountants made an exhaustive investigation of the properties of the Community and the amounts which it had available for depreciation, federal taxes, and return. A lengthy hearing was held, and all of the facts which it was necessary for the Commission to have before it in order to determine what would be a proper rate to be charged by the Community for domestic gas in the various towns in which it operates within the state of Oklahoma are in the record. Under these facts the Commission could find no justification for a reduction in the burner-tip rates of the Community even though it reduced the Lone Star's gate rate charge to 30 cents per thousand cubic feet, and it is for this reason that the Commission has steadfastly refused to make any findings of fact in reference to the property value and earnings of the Community. * * *

"Why does the Commission try to mislead this court into believing that the operating expenses of the Community were excessive when its own auditor, Paul Reed, testified that the operating expenses were normal; that the leakage in the plants was below the average and that the properties were well maintained and efficiently operated? The Commission was not bound by the company's original investment in the property because it employed engineers to determine the reproduction cost new of such properties; but the Commission was not disposed to be bound by any of the evidence because, as we have pointed out in the schedules appearing at pages 517 to 544 of

our original brief, the Community under the undisputed evidence would earn less than 5 per cent. for return on its property value as determined upon a reproduction cost new basis after an allowance of only 3 per cent. for depreciation and amortization. Such a return would be not only unfair and unreasonable, but confiscatory."

The cause should be remanded to the Corporation Commission, with directions to make findings of fact as the basis for said order and the reasons for the making thereof, either under the evidence already adduced or under such additional evidence as may be, upon proper notice and hearing, introduced by the parties, such additional evidence to be certified to this court as provided by the Constitution.