### MISSOURI-KANSAS-TEXAS R. CO. v. STATE (three cases).

Nos. 27818-27820. Feb. 1, 1938.

Rehearing Denied March 1, 1938.

John E. M. Taylor and M. D. Green, for plaintiff in error.

J. B. A. Robertson and S. J. Gordon, for defendant in error.

BAYLESS, V. C. J. Three appeals are consolidated for the purpose of presentation and determination. Missouri-Kansas-Texas Railroad Company filed three separate applications for authority to withdraw a full-time agent from each of the stations mentioned and to substitute in lieu thereof caretaker service. Objections were filed, and the applications were ordered referred to the Honorable J. B. A. Robertson, an attorney for the Corporation Commission, for hearing. After conducting hearings, the referee reported to the Corporation Commission, and it duly adopted the reports and made identical orders disposing of the applications. The company appeals.

Evidence was taken touching the extent of the business done at each station, the revenue derived therefrom, the expense of maintaining full-time agents, and the inconvenience likely to occur from the proposed change. In addition to this, the Order of Railroad Telegraphers was represented, and introduced evidence over the objection of the company. We quote herewith pertinent parts of the identical orders entered:

"The referee finds that the above figures (relating to revenues and expenses) are substantially correct, and based on such findings alone would be inclined to recommend that the application herein be granted, as the figures show that the station is operating at a loss at the present time; however, the railway company and the Order of Railroad Telegraphers are parties to an agreement covering the regulations and rates of pay of employees. This agreement was made effective August 1, 1928, and provides * * * the agent telegrapher shall receive (amount stated) for work done, and the testimony sponsored by the railway company shows that in the event of the change, the caretaker would receive a salary of only $15 per month. While it is true that the agreement does not cover the rates of pay of caretakers, it is the contention of the Order of Railroad Telegraphers that 30 days' notice should be given. as required by paragraph (b) of article XXV, before any change in the agency is made. * * * The evidence shows that no such notice was given in this case, and no opportunity was had to have conferences relative to the changing of the agency. * * * The referee

concludes that the present agent and the position to be filled by the caretaker * * * are both covered by the agreement, thus making it essential that the requirements of paragraph (b) of article XXV, above referred to, be met by the railroad before asking this commission for authority to change the station service. Said requirements have not been met, and the referee, therefore, recommends that this cause be dismissed without prejudice." (Parentheses added by the court.)

This recommendation was adopted by the Corporation Commission and the applications were duly dismissed without prejudice.

It is our opinion that there is but one issue of law to be considered, and that is the controlling effect, if any, upon the situations of the contract between the company and its employees. The company insists that this is the issue, but in the brief filed by the Corporation Commission it is insisted that this is a distorted issue. The Corporation Commission states that the effect of its order was not to give controlling effect to the contract, but was rather a procedural order. In other words, it says that it is merely requiring compliance with the requirement of 30 days' notice before considering an application to change the agency. We are unable to agree that its order is to be thus limited in its effect. If the obligation imposed by this requirement for 30 days' notice is so binding that the Corporation Commission ought not to proceed with a hearing upon the application without compliance therewith, it likewise is sufficiently controlling to deter the Corporation Commission from entering an order inconsistent with its other obligations. It is but delaying the day to say that we are now requiring only compliance with its procedural aspects, for the reasons which now impel. that position will later impel a decision in conformity with the contract in its entirety. We say, therefore, that the issue is as contended by the company.

We believe the language contained in the brief of the Corporation Commission so aptly states its position that it is proper to quote it and thereby completely set forth its reasoning. It says:

"We admit that the commission has no authority to render judgment for payment of money to be due and owing arising on an open account existing between public utilities. We are referring now to cases cited by appellant in its brief. That the commission has no power to pass upon the validity of private contracts, this being a power entrusted exclusively to the courts. That the

commission has no authority or power to take into consideration a contract made with an individual in which the railroad company had agreed to do certain things in consideration of a depot being placed on certain ground. In other words, we recognize that the Corporation Commission has no authority to take into consideration a private contract with individuals not immediately concerned in the question before the commission, because in those cases the private contract is one which can be enforced in a court of law or equity and should not be allowed to stand in the way of what is for the best interest of the public.

"However, the action of the Corporation Commission of Oklahoma in this case did not amount to an enforcement of the terms of a contract, and did not make any findings with reference to the private rights of any individual, person, or organization. It made no order enforcing the contract. It simply found that the contract was so interwoven with the thing which the Corporation Commission was asked to do and so vitally affected the employees of the railroad and the public in general that it could not disregard the solemn agreement which the railroad company had entered into with the organization representing its employees when a provision was set out in the contract and terms therein provided whereby the railroad company could at any time, when it felt the contract had become burdensome, relieve itself of the burden by giving notice to the organization that it desired to change the rates of pay at the stations in question. It seems clear, when all of the facts are taken into consideration, that the application made by the railroad company to the Corporation Commission for authority to abolish the station when in fact it was not to be abolished, and substitute a caretaker, it intended thereby through the aid of the Corporation Commission to secure an order which would allow it to do a thing which it could not do in the face of the agreement which it had entered into. There is evidence in the record that the organization, through its representative had correspondence with the representative of the railroad company in which it was indicated that if the pay that was being received by the agent at the station was more than what was justified by the business done at the station, that the organization was ready and willing to confer upon the question of what rate of pay would be fixed at that station."

Whatever disclaimers may be made by the Corporation Commission with respect to what it did or intended to do, it is clear from all that appears before that it intended to and did give consideration to the contract existing between the company and its employees, to the exclusion of the recommendation which the referee said the evidence justified.

In so doing the Corporation Commission committed error. Public utilities have the legal right to enter into contracts with their employees, or with their customers, or between themselves. Oklahoma G. & E. Co. v. Oklahoma Natural Gas Co., 85 Okla. 25, 205 P. 768. In so far as such contracts relate to the internal affairs of the corporations, they are not subject to the supervision or control of the Corporation Commission. Lone Star Gas Co. v. Corporation Commission, 170 Okla. 292, 39 P. (2d) 547. But such contracts cannot be permitted to interfere with the power and jurisdiction of the Corporation Commission over utilities (Lone Star Gas Co. v. Corporation Commission, supra), and when they are offered for the purpose of affecting the duty of the Corporation Commission to order what is just and reasonable between the public and the utility, or when the Corporation Commission finds that such a contract has such an effect, it is the duty of the Corporation Commission to ignore the contract. Oklahoma G. & E. Co. v. Oklahoma Natural Gas Co., supra; Oklahoma City v. Corporation Commission, 80 Okla. 194, 195 P. 498; Southern Oil Corporation v. Yale Natural Gas Co., 89 Okla. 121, 214 P. 131 (aff. 266. U. S. 583, 69 L. Ed. 453,•45 S. Ct. 97) ; and American Indian O. & G. Co. v. Collins & Co., 157 Okla. 49, 9 P. (2d) 438. It is our opinion, therefore, that this contract could not in any wise affect the power and jurisdiction of the Corporation Commission of Oklahoma to enter the order proper to be ordered upon the record.

The decision of this court in the case of Kurn v. State, 175 Okla. 379, 52 P. (2d) 841, a parallel case, states the rule which should be applied to the merits of the applications.

Argument is made that, since the Constitution of Oklahoma, art. 9, sec. 18, provides:

"Upon the request of the parties interested, it shall be the duty of the commission, as far as possible, to effect, by mediation, the adjustment of claims, and the settlement of controversies, between transportation or transmission companies and their patrons or employees"

—that the action of the Corporation Commission in dismissing the application for the lack of requisite notice was proper. The difficulty with this argument is that no one has requested the Corporation Commission to mediate between the company and em-

ployees, and the action taken did not purport to look to mediation of a wage dispute between the company and its employees. In addition to this, the Corporation Commission sets out in the record and in its brief records of proceedings before the National Railroad Adjustment Board involving a common carrier and its employees, and quotes a portion of an Act of the Congress of the United States (U. S. C. A. title 45, sec. 157) touching controversies between employers and employees. From this it is clear that the federal government has recognized the interstate character and implications of such relations, and has provided a board of mediation. The record before us does not call for a discussion of the intrastate aspect of such disputes, nor does it call for a discussion designed to mark out the fields of activity of the federal and state governments. It is sufficient to say that whatever rights have arisen between the company and its employees by virtue of said contract, the Corporation Commission of Oklahoma has not been called upon to mediate in any dispute, and if it were so called upon, its decision in the mediation could not affect its judgment in respect of the issue presented in this case. The powers and jurisdiction conferred upon it compel the announcement of law that its judgments must be untrammeled by private contracts.

Reference is made to the fact that the organization representing the employees requested conferences with the company for the purpose of discussing the reduction of salaries for such services in an effort to bring them within a range which would permit the retention of such agents. We are not called upon to consider or pass upon the agreements which the company and its employees may reach which would permit such result. Such an agreement might result in the company voluntarily recalling an agent, or in applying to the Corporation Commission for permission to re-establish the agency. The organization was represented at the hearing, and no claim of prejudice to it through lack of sufficient notice to prepare for hearing. The single claim of prejudice arises from the company's failure to abide the agreement to give notice.

The orders of the Corporation Commission dismissing the applications are vacated; and the Corporation Commission is directed to enter orders sustaining the applications.

All the Justices concur.